UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

MARK HOGAN and ELIZABETH HOGAN,

                Plaintiffs,

v.                                      7:16-CV-1325 (LEK/ATB)

LEWIS COUNTY, *et al.*

                Defendants.

────────────────────────────────────────

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this civil rights action pursuant to 42 U.S.C. § 1983 and

New York state law filed by plaintiffs Mark Hogan and Elizabeth Hogan against Lewis County,

District Attorney Leanne Mosler, Assistant District Attorney Caleb Petzoldt, Assistant District

Attorney Mark Lemieux (collectively the "Lewis County Defendants"), Trooper Fayle, Trooper

Craft, Frank Rose, David VandeWater, and Wilbur L. Stanford, Jr., is the Lewis County

Defendants' motion to dismiss Plaintiffs' claims against them (as well as Defendant Stanford's

cross-claim against them) for failure to state a claim or, in the alternative, for summary judgment

with regard to those claims. Dkt. No. 49 ("Summary Judgment Motion"). For the reasons set

forth below, the Summary Judgment Motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiffs' Complaint

Generally, in their Complaint, Plaintiffs assert ten claims. Dkt. No. 1 ("Complaint").

First, Mark Hogan claims that the Lewis County Defendants, Defendant VandeWater, and

Defendant Rose engaged in the malicious prosecution of him in violation of 42 U.S.C. § 1983

and the Fourteenth Amendment ("Claim One"). Id. ¶¶ 39–45. Specifically, he alleges that VandeWater and Rose intentionally or recklessly made false claims and acted in concert with Moser, Petzoldt, and Lemieux, and that Moser, Petzoldt, and Lemieux delayed prosecution until the claims against him were untimely but still pursued the claims despite their untimeliness and the lack of probable cause. Id. Mark Hogan alleges that the charges were eventually terminated in his favor. Id. ¶ 44.

Second, Mark Hogan claims that the same Defendants engaged in the malicious prosecution of him in violation of New York common law based on the same actions as those underlying Claim One ("Claim Two"). Id. ¶¶ 46–52.

Third, Mark Hogan claims that Fayle and Stanford subjected him to false arrest in violation of § 1983 and the Fourteenth Amendment because they (a) intentionally confined him through arrest, (b) he was aware of and did not consent to that confinement, (c) the confinement was undertaken without probable cause or privilege, and (d) he was harmed by the confinement ("Claim Three"). Id. ¶¶ 53–57.

Fourth, Mark Hogan claims that Craft subjected him to false imprisonment in violation of § 1983 and the Fourteenth Amendment because Craft (a) intentionally confined him through ordering him to remain on his property for an indeterminate duration, (b) he was aware of and did not consent to that confinement, (c) the confinement was undertaken without probable cause or privilege, and (d) he was harmed by the confinement ("Claim Four"). Id. ¶¶ 58–62.

Fifth, Mark Hogan claims that VandeWater and Stanford defamed him by knowingly or recklessly making false statements to others about him. Id. ¶¶ 63–66.) Specifically, Mark Hogan alleges that VandeWater knowingly or recklessly made false statements to Craft accusing Mark Hogan of theft of traffic cones, and that Stanford knowingly or recklessly made false statements

to Fayle accusing Mark Hogan of harassment; Mark Hogan alleges that he suffered harm as a result of these statements ("Claim Five"). Id.

Sixth, Mark Hogan claims that Stanford trespassed on his property when, on September 1, 2016, Stanford parked his vehicle on Mark Hogan's property without permission and refused to leave when Mark Hogan told him to leave; Stanford eventually moved his vehicle to another portion of the property and parked there without permission, and he again refused to leave when Mark Hogan told him to leave ("Claim Six"). Id. ¶¶ 67–72.

Seventh, Mark Hogan claims that VandeWater and Rose are liable for negligence ("Claim Seven"). Id. ¶¶ 73–78.) Specifically, Mark Hogan alleges that he was walking on a right-of-way located on property to which Vanderwater and Rose both claim ownership when he slipped and fell (causing injury to his shoulder) due to significant erosion in the right-of-way caused by Rose's negligent or reckless excavation on or near the property. Id. Mark Hogan alleges that (a) VandeWater knew or should have known of the dangerous condition, yet failed to repair it, (b) VandeWater owed a duty to maintain his property to prevent injury and harm to persons using the right-of-way and Rose owed a duty to ensure that any work he conducted did not create a dangerous condition, (c) VandeWater and Rose breached these duties, and (d) Mark Hogan required surgery and medical care for his injuries and was harmed as a result of VandeWater and Rose's negligence. Id.

Eighth, Mark Hogan claims that Lewis County, Moser, and Jane and John Doe(s) are liable to him for negligence due to a failure to purge dismissed criminal charges from his criminal record ("Claim Eight"). Id. at ¶¶ 79–82. Specifically, Mark Hogan alleges that these defendants had a duty to purge those charges from his record after the charges were dismissed,

they breached that duty by failing to purge those charges, and he has been harmed as a result of that breach of duty. Id.

Ninth, Elizabeth Hogan claims that VandeWater and Rose are liable to her for loss of consortium as a result of the injuries to Mark Hogan that were caused by their negligent actions ("Claim Nine"). Id. ¶¶ 83–86. Specifically, she alleges that Mark Hogan's shoulder injury "disturbed [her] social and family life, happiness, and general welfare, and [she] was deprived of her husband's support, comfort and companionship and suffered harm and disruption to her marital and daily life." Id.

Tenth, Plaintiffs claim that they are entitled to an award of punitive damages because "[s]ome or all of the acts and/or omissions of the Defendants herein were outrageous; were done in a deliberate, callous, malicious, wanton and oppressive manner intended to injure Plaintiffs, were done with an improper and evil motive, amounting to malice and spite; and were done in conscious disregard of Plaintiff's rights" ("Claim Ten"). Id. ¶¶ 87–88.

As relief, Plaintiffs seek, *inter alia*, compensatory damages, punitive damages, attorneys' fees and other costs, and injunctive relief. Id. at 14-15.

### B. Undisputed Material Facts on the Lewis County Defendants' Alternative Motion for Summary Judgment

As an initial matter, the Court notes that Plaintiffs make a number of denials that include no supporting citations. Dkt. No. 54-4 ("Plaintiff's Rule 7.1 Response") ¶¶ 1, 7-9, 13-15, 19, 29-30, 38, 47-48, 55, 57-58, 61, 62. Such denials are insufficient pursuant to the Local Rules, which require that "[e]ach denial shall set forth a specific citation to the record where the factual issues arise." L.R. 7.1(a)(3); see also Archie Comic Publ'ns, Inc. v. DeCarlo, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed

established" where defendant denied assertions in plaintiff's S.D.N.Y. Local Rule 56.1 statement but declined to provide record citations in support); N.Y. Teamsters v. Express Servs., Inc., 426 F.3d 640, 648–49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"). These facts are therefore deemed admitted.

The Court notes also that Plaintiffs made a number of his denials of the Lewis County Defendants' asserted facts because they believe those assertions were based on inadmissible hearsay evidence. Pl.'s Rule 7.1 Resp. ¶¶ 24–29, 34–46, 47–52, 55–56, 58, 62. However, these denials are insufficient to create a genuine dispute of fact because, as discussed in greater detailed below in Part III.B of this Memorandum-Decision and Order, the Court finds that Plaintiffs' evidentiary challenges are without merit.

Turning to the particular material facts undisputed by the parties, unless otherwise noted, the following facts were asserted and supported with accurate record citations by the Lewis County Defendants in their Statement of Material Facts and expressly admitted by Plaintiffs in their response thereto or denied without appropriate record citations. Compare Dkt. No. 49-1 ("Defendants' Rule 7.1 Statement") with Pls.' Rule 7.1 Resp.

1. Mark and Elizabeth Hogan's Complaint mainly stems from a long-running feud between Mark Hogan and his neighbors (including some Defendants) on Hiawatha Lake in the Town of Greig, Lewis County, New York. The feud has principally involved boundary disputes between Mark Hogan (who owns a

number of lots on Hiawatha Lake) and his neighbors, but has also included allegations of harassing behavior on the part of Plaintiff Mark Hogan and some of his neighbors.[1]

2.  Mark Hogan filed a Notice of Claim with Lewis County on January 5, 2016.[2]

3.  On November 4, 2016, Plaintiffs commenced this action, in which Mark Hogan asserted causes of action of malicious prosecution (under federal and common law) and negligence against the Lewis County Defendants and other claims against the other Defendants.

4.  The Lewis County Defendants filed an Answer to Plaintiffs' Complaint on February 15, 2017.

---

[1]    Plaintiffs deny part of this fact, stating that the cited New York State Supreme Court Decision and Order is not relevant to this matter and disagreeing with the characterization of "feud" and "boundary disputes." Pls.' Rule 7.1 Resp. ¶ 1 However, whether a fact is relevant or material "is a legal conclusion to be made by the Court." Zhao-Royo v. New York State Educ. Dep't, 14-CV-0935, 2017 WL 149981, at *2 n.2 (N.D.N.Y. Jan. 13, 2017) ("As a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted."); see also Newmark v. Lawrence Hosp. Ctr., 07-CV-2861, 2008 WL 5054731, at *8 n.7 (S.D.N.Y. Oct. 20, 2008) (finding two material facts admitted where the non-movant merely objected to the materiality of the facts); cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.").

[2]    Plaintiffs deny this asserted fact, but merely to state that they in fact served two notices of claim. Pls.' Rule 7.1 Resp. ¶ 2. Because Plaintiffs have not offered a proper denial, but rather merely improperly submitted additional facts, the Court deems this fact to have been admitted. See Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); Goldstick v. The Hartford, Inc., 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

5.      On March 2, 2017, Stanford filed an Answer with Cross-Claims against all Defendants seeking contribution and/or indemnification.

6.      On March 23, 2017, the Lewis County Defendants filed an Answer to the Cross-Claims of Defendant Stanford, incorporating all affirmative defenses asserted in its original Answer to the Complaint.

7.      In October 2006, Ricky West and others brought an action in New York State Supreme Court against Plaintiffs (the "prior state court action") mainly seeking a determination that the Wests had acquired title by adverse possession to a disputed parcel of land located between the Wests and Plaintiffs. In response, Plaintiffs countersued and brought a third-party action against VandeWater mainly seeking a declaration of Plaintiffs' rights with respect to "ingress and egress . . . on the private roadways owned by [VandeWater]." VandeWater countersued, mainly seeking a declaration of Plaintiffs' rights with respect to the same property.[3]

8.      A jury trial was held in August 2009. Based on the jury's verdict and its own decisions, the State Supreme Court determined in part that the Wests were the "absolute fee titled owners to the Disputed Parcel," and that Plaintiffs had "no right, title, or interest in or to the Disputed Parcel." The Court also permanently enjoined Plaintiffs "from going upon the property of [the Wests]."[4]

---

[3]      See, supra, note 1 of this Memorandum-Decision and Order.

[4]      Plaintiffs deny this asserted fact as being not relevant or material, and add additional facts. Pls.' Rule 7.1 Resp. ¶ 8. Because Plaintiffs have not offered a proper denial, but rather merely improperly submitted additional facts, the Court deems this fact to have been

9.      With respect to Plaintiffs and VandeWater, the State Supreme Court ordered that Plaintiffs were "permanently enjoined from entering upon the lands of [VandeWater], except for obtaining ingress and egress along the designated rights of way to" Plaintiffs' properties.

10.      On appeal to the Appellate Division, Fourth Department, Plaintiffs sought to reverse the State Supreme Court's decision and order. In its decision affirming the State Supreme Court's decision and order, the Fourth Department agreed that the Wests were entitled to the disputed parcel and that Plaintiffs were liable to the Wests for a reduced punitive damages award.

11.      In finding that Mark Hogan was liable for punitive damages, the Fourth Department determined that his conduct toward the Wests was "intentional, evince[d] a high degree of moral turpitude and demonstrate[d] such wanton dishonesty as to imply a criminal indifference to [his] civil obligations," and at "the very least," he engaged "in conduct that 'amounted to a wanton, willful or reckless disregard of [the Wests'] rights.'" According to the Fourth Department, Mark Hogan's wanton conduct toward the Wests included "destroy[ing] [the Wests'] property, including desecrating a memorial, and the evidence [also] strongly suggests that he plugged [the Wests'] vent pipe, rendering their toilet unusable, and entered their cellar to cut and remove the new vent pipe that [the Wests'] subsequently installed."[5]

---

admitted. <u>Baity</u>, 51 F. Supp. 3d at 418; <u>Goldstick</u>, 2002 WL 1906029, at *1.

     [5]      <u>See</u>, <u>supra</u>, note 4 of this Decision and Order.

12. In July 2011, Mark and Elizabeth Hogan filed a federal complaint in the U.S. District Court for the Northern District of New York (the "prior federal action"). That complaint was subsequently amended and supplemented. Among other claims, Plaintiffs alleged claims for false arrest, abuse of process, municipal liability, and conspiracy under§ 1983 based on the May 29, 2010, arrest of Mark Hogan for petit larceny and trespass. The same arrest is the basis for some of Plaintiffs' claims in the current Complaint.

13. The Lewis County Defendants were named as defendants in the prior federal action and moved for summary judgment. The Court issued a decision and order on March 8, 2013, which determined that the officers had probable cause for the May 29, 2010, arrest for larceny based on information known to Deputy Brett W. Croneiser and Sergeant Ryan J. Lehman at the time of the arrest. The Court went on to note that Mark Hogan's concerns about the motives of the complaining witnesses "are insufficient to trump the photographs, sworn complaints, and actual physical evidence that [Hogan] had taken the steel cables and sawhorses."

14. Mark Hogan moved for reconsideration of the March 8, 2013, Decision and Order, and, on January 10, 2014, the Court affirmed its decision as to the false arrest claim related to the charge of petit larceny.

15. Although the March 8, 2013, decision and order permitted the conspiracy claim to remain pending, all claims against the Lewis County Defendants were subsequently dismissed.

16. Plaintiffs' remaining claims in the prior federal action were recently decided at a

bench trial held between June 12, 2017, and June 16, 2017. The Court found for the defendants on the remaining claims of interference with an easement and nuisance.

17. The Court noted that the case "represents the latest skirmish in a continuing saga of disputes between neighboring properties," and that "[Mark] Hogan has been castigated by other judges; and has had punitive damages assessed against him by a jury of his peers. Yet, he persists in his campaign of lawsuits. While it is unlikely that this Court's decision will be the last in this ongoing battle, the Court is hopeful that putting the issue of the location of the easement to rest might result in the mitigation of hostilities."

18. Plaintiff Mark Hogan has asserted malicious prosecution claims against the Lewis County Defendants for twelve alleged misdemeanor charges, identified by date as follows: Charge 1, May 14, 2010, trespass; Charge 2, May 15, 2010, petit larceny; Charge 3, May 29, 2010, trespass; Charge 4, May 29, 2010, petit larceny; Charge 5, October 3, 2010, trespass; Charge 6, October 4, 2010, trespass; Charge 7, October 6, 2010, trespass; Charge 8, July 2, 2011, trespass; Charge 9, July 2, 2011, criminal mischief; Charge 10, August 27, 2011, petit larceny; Charge 11, July 3, 2014, criminal mischief; and Charge 12, July 3, 2014, trespass.[6]

19. In their Complaint in this action, Plaintiffs alleged that, "[u]pon information and

---

[6]     Without providing a supporting record citation, Plaintiffs deny that the referenced charges were all misdemeanor charges. Pls.' Rule 7.1 Resp. ¶ 19. However, the Complaint explicitly alleges that these charges were all misdemeanors. Compl. ¶ 18. This fact is therefore deemed admitted.

belief, some of said charges are duplicative and misidentify the date of the alleged conduct, but, through the intentional conduct and/or negligence of Defendants Moser, Petzoldt, and Lemieux, said Defendants caused the number of charges to duplicate and multiply without accusatory instruments or sworn allegations against [Plaintiff Mark Hogan]."

20.    As to Charges 1 and 2 of the Complaint for petit larceny and trespass on May 14 and 15, 2010, following the prior state court action (which enjoined Mark Hogan from entering VandeWater's land for purposes other than ingress and egress), Sergeant Lehman and Deputy Croneiser were dispatched on a complaint for petit larceny and trespass on Hiawatha Lake Road in the Town of Greig on May 15, 2010. The arrest that followed was the basis for Plaintiffs' false arrest and related claims against the Lewis County Defendants in the prior federal action. The Court in the prior federal action determined that the arrest for petit larceny was based upon probable cause and all causes of action against the Lewis County Defendants were dismissed.[7]

21.    The pertinent facts are that, upon arriving at Hiawatha Lake Road, Deputy Croneiser met with Hiawatha Lake Road property owners Rose and VandeWater, as well as with Trooper Myers of the New York State Police, who had already arrived on the scene.

22.    Rose showed Deputy Croneiser, Trooper Myers, and Sergeant Lehman security camera photographs from May 14, 2010, that showed Mark Hogan stealing

---

[7]    *See, supra,* note 4 of this Decision and Order.

Defendant Rose's sawhorses and steel cable and trespassing on VandeWater's property.

23. Sergeant Lehman was in possession of the decision in the prior state court action that addressed the boundary and property lines between Plaintiffs and neighbors on Hiawatha Lake.

24. Before leaving Hiawatha Lake Road on May 15, 2010, Deputy Croneiser and Sergeant Lehman obtained sworn statements from Rose and VandeWater regarding Mark Hogan's larceny and trespass.

25. Deputy Croneiser was unable to charge Mark Hogan with petit larceny until May 29, 2010, because Mark Hogan lived out of state. On May 29, 2010, Deputy Croneiser arrived at Mark Hogan's address on Hiawatha Lake and transported him to the Public Safety Building in Lowville for processing. Hogan was issued an appearance ticket for petit larceny and released. The trespass charge was added at Mark Hogan's arraignment.[8]

26. On the day after Mark Hogan was arrested for petit larceny, he returned Defendant Rose's steel cables and sawhorses to the Lewis County Sheriff's Department.[9]

27. As to Charges 3 and 4, a review of the District Attorney's Office's records indicates that the May 29, 2010, charges against Plaintiff Mark Hogan were for the trespass and petit larceny charges associated with the May 14 and 15, 2010, investigation discussed above; there were no separate charges.

---

[8] See, supra, note 4 of this Memorandum-Decision and Order.

[9] Id.

28. As a result, the alleged Charges 3 and 4 set out in the Complaint are merely duplicative of Charges 1 and 2.

29. As to Charge 5, on October 3, 2010, Trooper Craft received a complaint from VandeWater of a possible trespass at a camp on Hiawatha Lake Road.

30. When Trooper Craft arrived at the location, VandeWater indicated that his security camera had taken photographs of a red truck backing onto his lawn and out of an adjacent driveway, in violation of the state court's permanent injunction.

31. VandeWater provided Trooper Craft with a copy of a photograph showing the truck on the property.

32. Based on the investigation by Trooper Craft (which included a review of the permanent injunction and the photograph) and a sworn statement from VandeWater, a criminal summons was issued by Town Justice Chase.

33. Trooper Craft served the criminal summons on Mark Hogan on December 6, 2010.

34. As to Charge 6, a review of the District Attorney's Office's records indicates that Mark Hogan's arrest for trespass was associated with the October 3, 2010, investigation discussed in relation to Charge 5; there were no separate or duplicate charges.[10]

---

[10] Plaintiffs implicitly argue that this charge is not duplicative, relying on affidavits from Moser indicating an offense of trespass occurring on October 4, 2010. Pls.' Rule 7.1 Resp ¶ 38; Dkt. No. 54-2 at 15–18, 26. However, a letter from Town Judge Kevin McArdle indicates that the dates listed in various transfer orders (based on the affidavits of Moser) did not match the dates on any accusatory instruments. Id. at 21. Without any evidence of an accusatory instrument related to this charge, Plaintiffs have not shown that Mark Hogan was charged separately for any conduct occurring on October 4, 2010, specifically. This fact is therefore deemed admitted.

35.     As a result, the alleged Charge 6 set out in the Complaint is merely duplicative of Charge 5.[11]

36.     As to Charges 8 and 9, on July 2, 2011, Trooper Craft and Trooper Kidder received a complaint of a possible trespass at a camp on Hiawatha Lake Road.

37.     Upon arriving at the scene, Trooper Kidder interviewed VandeWater, who stated that Mark Hogan had trespassed on his property.

38.     Officer Kidder also interviewed Ricky West, who stated that he had watched Mark Hogan spray paint a boulder on VandeWater's property; when West asked Mark Hogan what he was doing, "he replied by giving him the middle finger and saying 'isn't it pretty.'"

39.     Officer Kidder obtained sworn statements from VandeWater and West.

40.     Thereafter, Mark Hogan was charged on July 24, 2011, and given an appearance ticket returnable on August 9, 2011.

41.     As to Charge 10, on August 27, 2011, Trooper Lyndaker was dispatched to Hiawatha Lake Road for a possible larceny.

42.     Upon arriving at the scene, Trooper Lyndaker interviewed VandeWater and his son, Alex VandeWater.

43.     Alex VandeWater indicated that he was on the property using a weed wacker when he saw Mark Hogan drive onto the property in his pickup truck, get out, remove a four-by-five "no trespassing" sign, put it in the back of his truck, and drive away.

---

[11]     See, supra, note 10 of this Decision and Order.

14

44. Alex VandeWater indicated that Mark Hogan did not know that VandeWater was watching him because VandeWater had turned off the weed wacker and had been hidden by the tree line.

45. Trooper Lyndaker obtained sworn statements from both VandeWaters.

46. Thereafter, Trooper Lyndaker attempted to interview Mark Hogan. Plaintiff refused to answer any questions on the advice of counsel and agreed to meet Trooper Lyndaker at the station for processing.

47. Thereafter, Mark Hogan was processed for petit larceny and issued an appearance ticket returnable on September 13, 2011.

48. As to Charges 11 and 12, on July 3, 2014, VandeWater filed another complaint with the Lewis County Sheriff's Office regarding a trespass by Mark Hogan on his property.

49. VandeWater stated that Mark Hogan drove onto his property over three fiberglass stakes (which caused the stakes to snap) and drove over a freshly seeded area of the lawn (which caused damage and ruts).

50. On or about September 5, 2012, Mark Hogan filed a motion to dismiss in the Town of Leyden Justice Court seeking dismissal of all charges against him on the basis that he was denied his right to a speedy trial ("the 2012 motion").

51. The charges relevant to the 2012 motion were Charge 1, Charge 2, Charge 5, Charge 8, Charge 9, and Charge 10.

52. On or about September 21, 2012, the Lewis County Defendants filed an opposition to the 2012 motion.

53.    In his opposition, Petzoldt argued that nearly all of the various delays in the actions as to the above charges were due to Mark Hogan's own requests for substantial adjournments and filing of various pro se motions, all of which were granted.

54.    In 2015, Plaintiff Mark Hogan filed a motion to dismiss seeking dismissal of Charges 11 and 12.

55.    On October 7, 2015, Lemieux appeared at a hearing before Town Justice Keith Todd in the Town of Lyonsdale.

56.    At the hearing, Justice Todd granted the 2015 motion and dismissed the 2014 charges.

57.    Justice Todd reserved decision on the 2012 motion.[12]

58.    Upon information and belief, Justice Todd granted the 2012 motion and dismissed the charges against Plaintiff Mark Hogan on or about December 2016.

**C.    Parties' Briefing on the Pending Motion**

      **1.    Lewis County Defendants' Motion for Summary Judgment**

            **a.    Lewis County Defendants' Memorandum of Law**

In their motion for summary judgment, the Lewis County Defendants assert eight arguments. Dkt. No. 49-22 ("Defendants' Memorandum of Law") at 11-24. First, the Lewis County Defendants argue that Mark Hogan's First and Second Claims for malicious prosecution should be dismissed because the evidence establishes that there was probable cause for each

---

[12]    Plaintiffs deny this asserted fact, but provide no record citation to support that denial. Pls.' Rule 7.1 Resp. ¶ 66. This fact is therefore deemed admitted. Archie Comic Publ'ns, Inc., 258 F. Supp. 2d at 319; N.Y. Teamsters, 426 F.3d at 648–49.

charge. Id. at 11–15. Specifically, the Lewis County Defendants argue as follows: (a) as to the

May 14–15, 2010, charges for petit larceny and trespass, the Court has already ruled that

probable cause existed for the petit larceny charge at time of Mark Hogan's arrest, and that sworn

statements, surveillance photographs, a court decision regarding a boundary dispute, and maps of

the properties provide probable cause to believe that Mark Hogan had committed petit larceny

and trespass; (b) as to the October 3, 2010, charge for trespass, sworn statements, surveillance

photographs, a court decision regarding a boundary dispute, and maps of the property provided

Town Justice Chase with reason to believe there was probable cause to issue a summons for

trespass; (c) as to the July 2, 2011, charges for trespass and criminal mischief, sworn statements

of VandeWater and a neighbor, Mr. West, provided probable cause to believe Mark Hogan had

committed trespass and criminal mischief; (d) as to the August 27, 2011, charge for petit larceny,

sworn statements of VandeWater and his son provided probable cause to believe that Mark

Hogan had committed petit larceny; and (e) as to the July 3, 2014, charge for criminal mischief

and trespass, the sworn complaints of VandeWater provided probable cause that Mark Hogan

had committed criminal mischief and trespass. Id. at 13–14.

Second, the Lewis County Defendants argue that, in the alternative, the First and Second

Claims are barred by principles of sovereign and absolute immunity. Id. at 15–16. Specifically,

the Lewis County Defendants argue that Moser, Petzoldt, and Lemieux are entitled to sovereign

immunity to the extent they are being sued in their official capacities, and to absolute or

prosecutorial function immunity to the extent they are being sued in their individual capacities.

Id.

Third, the Lewis County Defendants argue that, in the alternative, the First and Second

Claims against Moser, Petzoldt, and Lemieux are barred by the doctrine of qualified immunity as a matter of law. Id. at 17–18. Specifically, the Lewis County Defendants acknowledge that, although the right to be free from arrest without probable cause is well established, Moser, Petzoldt, and Lemieux believed with objective reasonableness that their actions in prosecuting Mark Hogan were done with sufficient probable cause and they therefore are protected from liability by the doctrine of qualified immunity. Id.

Fourth, the Lewis County Defendants argue that, in the alternative, the First and Second Claims should be dismissed as to Lewis County due to the lack of a meritorious individual cause of action against it. Id. at 18–20. Specifically, the Lewis County Defendants argue that, because the claims for malicious prosecution against the individual Lewis County Defendants must be dismissed based on their previous arguments, Plaintiffs' claims against Lewis County itself must be dismissed because "municipal liability cannot exist in the absence of a viable claim against an individual." Id.

Fifth, the Lewis County Defendants argue that the Eighth Claim for negligence against Lewis County, Moser, and John/Jane Doe(s) must be dismissed because Mark Hogan has not shown that Moser specifically had a duty to purge the dismissed criminal charges from Mark Hogan's criminal record, and has not alleged that Lewis County owed him a special duty (a finding which they argue is a prerequisite to asserting a cause of action for negligence against a municipality). Id. at 20–21.

Sixth, the Lewis County Defendants argue that Plaintiffs' request for punitive damages against them should be dismissed. Id. at 21–22. Specifically, the Lewis County Defendants argue that a municipality and individuals acting in their official capacity cannot be held liable for

damages under § 1983 in any event, and that, as to claims against the individual defendants in their individual capacities, the evidence shows that his arrests were based on accusatory instruments and that there was probable cause for the arrests and prosecutions with no evidence of intentional wrongdoing, evil motive, or reckless or callous indifference. Id. at 22.

Seventh, the Lewis County Defendants argue that the dismissal of the First, Second, and Eighth Claims also warrants dismissal of Stanford's cross-claims for indemnification and/or contribution against them because those cross-claims are moot where no liability has been found. Id. at 23.

Eighth, and last, the Lewis County Defendants argue that a protective order should be granted staying discovery pending decision on its motion. Id. at 23–24.)

### b.      Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiffs assert four arguments. Dkt. No. 54 ("Plaintiffs' Opposition Memorandum of Law") at 3–19. First, in response to the Lewis County Defendants' first argument, Plaintiffs argue that the Lewis County Defendants have not shown that there is an absence of a genuine dispute of material fact related to the First and Second Claims for malicious prosecution. Id. at 3–16.) Specifically, Plaintiffs argue that the evidence relied on by the Lewis County Defendants to support their argument regarding probable cause is by and large inadmissible under the Federal Rules of Evidence and therefore cannot constitute an adequate ground on which to base a grant of summary judgment. (Id. at 6–16.) In particular, Plaintiffs assert the following challenges: (a) the affidavit of the Lewis County Defendants' attorney is not based on personal knowledge; (b) the declaration of Lemieux is not based on personal knowledge because he was not hired by the District Attorney's office until February

2015, well after when the charges occurred; and (c) depositions by VandeWater and Rose and others as well as photographs are not self-authenticating and do not contain a certification authenticating them. Id. at 6–16. Plaintiffs also argue that the previous decision by the Court does not support the existence of probable cause for the May 2010 trespass charge because the Court found only that probable cause existed as to the petit larceny charge, not the trespass charge. Id. at 8.) Plaintiffs admit that police incident reports and charging instruments may be admissible self-authenticating public records, but argue that those reports and instruments do not show a genuine dispute of material fact as to the existence of probable cause. Id. at 7.

Second, in response to the Lewis County Defendants' second and third arguments, Plaintiffs argue that the Lewis County Defendants are not entitled to absolute or qualified immunity. Id. at 16–18. Specifically, Plaintiffs argue that Defendant Moser supervised and assisted the police with the investigations leading to the charges against Plaintiff Mark Hogan (actions that Plaintiffs argue fall outside the scope of her functions as a prosecutor) and therefore does not qualify for absolute immunity. Id. at 17. Plaintiffs additionally argue that the Lewis County Defendants are not entitled to qualified immunity because they have not furnished proof that there was probable cause for the charges or as to whether reasonable officers could agree that there was. Id. at 17–18.

Third, in response to the Lewis County Defendants' fourth argument, Plaintiffs argue that the absence of individual liability would not necessarily require a finding that there is no municipal liability. Id. at 18–19. Plaintiffs also argue that qualified immunity does not apply to state law claims, nor is it available to a municipality, but rather applies only to individuals sued in their individual capacities. Id. at 19.

Fourth, in response to the Lewis County Defendants' sixth argument, Plaintiffs argue that

their request for punitive damages against these Defendants should not be dismissed because the question of entitlement to punitive damages is one that is properly for a jury to decide rather than for the Court to decide as a matter of law. Id. at 19.

### c.  Lewis County Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition memorandum of law, the Lewis County Defendants assert four arguments. Dkt. No. 55 ("Defendants' Reply Memorandum of Law") at 4–13. First, the Lewis County Defendants argue that Plaintiffs' challenges to the existence of probable cause have no merit. Id. at 4–10. The Lewis County Defendants note that Plaintiffs had unsuccessfully raised the same arguments (i.e., that supporting evidence was inadmissible hearsay) in their previous case before the Court. Id. at 4. In particular, the Lewis County Defendants argue that the challenged evidence is admissible for the following reasons: (a) the attorney affidavit merely lays out the background of the case and therefore can be considered; (b) Lemieux's declaration was based on police reports, which are admissible so long as they are not offered for the truth of the matter asserted but rather to show what statements were made to officers and if they provided probable cause for arrest; and (c) the accusatory instruments are supported by sworn depositions and therefore can be considered, as can the police reports. Id. at 4–6.) The Lewis County Defendants argue that the evidence submitted appropriately and adequately supports the existence of probable cause for each of the charges. Id. at 6–10.

Second, the Lewis County Defendants argue that Plaintiffs' First and Second Claims are barred by absolute and qualified immunity because the case law cited by Plaintiffs is not applicable and, even if Moser acted outside the scope of prosecution by participating in the investigation, her conduct is still subject to the doctrine of qualified immunity. Id. at 11–12.

Third, the Lewis County Defendants argue that the First, Second, and Eighth Claims should be dismissed as against Lewis County because Plaintiffs (a) have not adequately responded to the Lewis County Defendants' argument that the dismissal of individual claims merits the dismissal of municipal claims, (b) failed to respond to their fifth argument regarding Plaintiffs' Eighth Claim (i.e., for negligence), and (c) have not amended the Complaint to allege facts plausibly suggesting any special duty owed by Lewis County. Id. at 12.

Fourth, the Lewis County Defendants argue that the request for punitive damages should be dismissed because Plaintiffs have not shown intentional wrongdoing, evil motive, or reckless or callous indifference. Id. at 12–13.

## II. LEGAL STANDARDS

### A. Legal Standard Governing a Motion for Summary Judgement

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[13] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." Id., 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

---

[13]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).

ambiguities and draw all reasonable inferences against the movant. Id., 477 U.S. at 255. In

addition, "[the movant] bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s]

the absence of any genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323-24

(1986). However, when the movant has met its initial burden, the non-movant must come forward

with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c),

(e).[14]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[15] Of course, when a

non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has

been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted

automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above,

the Court must assure itself that, based on the undisputed material facts, the law indeed warrants

judgment for the movant. Champion, 76 F.3d at 486; Allen v. Comprehensive Analytical Group,

Inc., 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001); L.R. 7.1(b)(3). What the non-movant's failure to

respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set

---

[14]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a
response to the movant's Statement of Material Facts, which admits or denies each of the
movant's factual assertions in matching number paragraphs, and supports any denials with a
specific citation to the record where the factual issue arises. L. R. 7.1(a)(3).

[15]     Cusamano v. Sobek, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (citing
cases).

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[16] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. See L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); Rusyniak v. Gensini, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (collecting cases); Este-Green v. Astrue, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (collecting cases).

### B.     Legal Standard Governing Claims Under § 1983

In order to state a claim pursuant to § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right

---

[16]     See, e.g., Beers v. GMC, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27–31 (N.D.N.Y. March 17, 1999) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; Devito v. Smithkline Beecham Corp., 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

acted under color of state . . . law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980) (internal quotations omitted). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Kregler v. City of New York, 821 F. Supp. 2d 651, 655-656 (S.D.N.Y. 2011) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). A plaintiff may allege the personal involvement of a defendant who occupies a supervisory position by alleging that the defendant did one or more of the following things: "(1) directly participated in the infraction; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited 'gross negligence' or 'deliberate indifference' to the constitutional rights of [the plaintiff] by having actual or constructive notice of the unconstitutional practices and failing to act." Kregler, 821 F. Supp. 2d at 655–56 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995); Wright, 21 F.3d at 501).

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)). In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability. See Jones, 691 F.3d at 80 (citing Monell, 436 U.S.

at 691). Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability. However, acts done "pursuant to municipal policy, or [that] were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware" would justify liability of the municipality. Jones, 691 F.3d at 81. Further, "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses. " Id.

## III.    DISCUSSION

### A.    Whether the Court May Decide the Lewis County Defendants' Alternative Motion for Summary Judgment Without Further Discovery

Plaintiffs argue that they "ha[ve] not yet been provided an opportunity to obtain relevant and necessary discovery in these matters." Pls.' Rule 7.1 Resp. at 18-19. However, the Court finds that this single statement does not preclude it from deciding the Lewis County Defendants' alternative motion for summary judgment without providing Plaintiffs further opportunity to obtain and present additional evidence. Of note, Plaintiffs have not submitted an affidavit or declaration specifying reasons as to why Plaintiffs cannot present facts sufficient to justify their opposition. Fed. R. Civ. P. 56(d). The Court also notes that there has been some opportunity to conduct discovery in this matter: the Civil Case Management Order and the Uniform Pretrial Scheduling Order (filed May 3, 2017, and May 15, 2017, respectively) both indicate the discovery deadlines set by the Court and Defendants' motion was not filed until September 6, 2017, approximately four months later. Dkt. Nos. 43, 44, 49. Additionally, at a telephonic status conference held on September 7, 2017, the Court directed counsel for Plaintiffs and Defendants to confer to determine what limited discovery, if any, was warranted in relation to Defendants'

motion and noted that Plaintiffs' counsel had failed to respond to various discovery demands from Defendants. Docket Entry dated 9/7/2017. Plaintiffs therefore had an opportunity to conduct discovery relevant to Defendants' motion, and did in fact submit additional evidence along with their opposition memorandum of law. The Court consequently finds that it may decide Defendants' alternative motion for summary judgment without further discovery.

**B.  Whether Probable Cause Existed to Support the Charges Against Mark Hogan for Purpose of His Malicious Prosecution Claims**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. Defs.' Mem. of Law at 11–15; Defs.' Reply Mem. of Law at 4–10. To these reasons, the Court adds the following analysis.[17]

Under federal and New York law, the existence of probable cause for a criminal charge is a complete defense to a claim for malicious prosecution. Manganiello v. City of New York, 612 F.3d 149, 161–62 (2d Cir. 2010). Additionally, under both federal and New York law, "[p]robable

---

[17]     The Court notes at the outset that, to the extent Plaintiffs assert a claim of malicious prosecution pursuant to the Fourteenth Amendment (through § 1983), the Second Circuit and the Supreme Court have found that "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 114–15 (2d Cir. 1995) (citing Albright v. Oliver, 510 U.S. 266 (1994)). In particular, the Supreme Court rejected the argument that a plaintiff could bring a viable claim pursuant to § 1983 based on a deprivation of his "liberty interest" to be free from criminal prosecution without probable cause. Albright, 510 U.S. at 269. Rather, the deprivation of the liberty interest must rise to the level of a seizure under the Fourth Amendment in order to state a claim for malicious prosecution pursuant to § 1983. Singer, 63 F.3d at 116; Cross v. City of Albany, 16-CV-0418, 2016 WL 6106476, at *5 (N.D.N.Y. Oct. 19, 2016) (Kahn, J.). Consequently, to the extent that Plaintiffs' First Claim is premised on the Fourteenth Amendment as the source of his asserted constitutional right, that claim must be dismissed. However, because a proper malicious prosecution claim pursuant to § 1983 and the Fourth Amendment necessarily requires consideration of the same issues as required for Plaintiffs' malicious prosecution claim pursuant to New York common law, the Court has also considered Plaintiffs' claim as if it had been brought pursuant to the Fourth Amendment.

cause is defined as 'such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty.'" Perryman v. Vill. of Saranac Lake, 839 N.Y.S. 290, 292 (N.Y. App. Div. 2007) (quoting Colon v. City of New York, 455 N.E.2d 1248 (N.Y. 1983)); see also Phillips v. DeAngelis, 571 F. Supp. 2d 347, 354 (N.D.N.Y. 2008) ("Probable cause to prosecute exists when the facts possessed by the officer are sufficient to warrant a prudent person in believing that the suspect could be successfully prosecuted."). It is the facts that are available at the time of the initiation of the prosecution that are relevant to evaluating whether probable cause existed; facts that become available after the initiation of the prosecution are irrelevant. Phillips, 571 F. Supp. 2d at 354. Even if there was probable cause at the time of arrest, that probable cause can dissipate before prosecution if "the groundless nature of the charges [is] made apparent by the discovery of some intervening fact" or evidence. Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). "[P]robable cause must be shown as to each criminal charge underlying the malicious prosecution claim." Burton v. Undercover Officer, 671 F. App'x 4, 5 (2d Cir. 2016) (citing cases). Whether probable cause exists is a "'fluid' standard that does not demand 'hard certainties' . . . or 'mechanistic inquiries.'" Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013) (quoting Illinois v. Gates, 462 U.S. 213, 231-32 (1983)); Florida v. Harris, 568 U.S. 237 (2013).

As an initial matter, the Court must address Plaintiffs' challenges to the evidence on which Defendants rely to support their argument that probable cause existed for the relevant criminal charges. As detailed above in Part I.C.2 of this Memorandum-Decision and Order, Plaintiffs' arguments related to the absence of probable cause consist primarily of challenges to the admissibility of the evidence proffered by Defendants under the Federal Rules of Evidence. Pls.'

Opp'n Mem. of Law at 6–16, 18. The Court finds these arguments unpersuasive. In particular, the Court finds that the police reports themselves are admissible as public records, and that statements in those police reports are not inadmissible hearsay if they are offered for the purpose of showing probable cause existed rather than for the truth of the matter asserted (i.e., that Plaintiff Mark Hogan committed the charged crimes). See Smith v. City of New York, 14-CV-9069, 2016 WL 5793410, at *3 (S.D.N.Y. Sept. 30, 2016) (noting that police records are admissible as either business records or public records, and that statements of witnesses in those reports are not inadmissible hearsay when they are not offered for the truth of the matter asserted, but rather to establish whether the arresting officers had probable cause); Nicholas v. City of Binghamton, 10-CV-1565, 2012 WL 3261409, at *5 n.2 (N.D.N.Y. Aug. 8, 2012) ("It is well established that entries in a police report resulting from the officer's own observations and knowledge may be admitted as evidence because police reports fall under the public records exception to the hearsay rule."); Williams v. City of New York, 10-CV-2676, 2012 WL 511533, at *3 n.2 (E.D.N.Y. Feb. 15, 2012) (admitting police reports both as public records and because the witness statements contained therein were not offered for the truth of the matter asserted). The Court may therefore consider these police reports for the purposes of this summary judgment motion when determining whether probable cause existed. Similarly, the relevant photographs and sworn statements by VandeWater, his son, Rose, and Mr. West contained in or attached to the police reports available at the time of Mark Hogan's arrest and/or prosecution are also admissible because they are not being asserted for the truth of the matter, but rather to establish the existence

of probable cause.[18]

The declaration of Lemieux is also admissible for the purposes of this summary judgment motion. Although Plaintiffs argue that it is not based on personal knowledge because Lemieux did not begin working for the District Attorney's office until well after the charges that are the basis for his claim, "an affiant may testify as to the contents of records she reviewed in her official capacity." Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000). In his declaration, Lemieux states that he is an Assistant District Attorney at the Lewis County District Attorney's office and that, in that capacity, he has reviewed "records kept and maintained by the Office of the Lewis County District Attorney" regarding the charges and related prosecutions at issue in this case. Dkt. No. 49-3 ("Lemieux Declaration") ¶¶ 1, 5. Notably, the entirety of the substantive portion of Defendant Lemieux's declaration merely summarizes information that was contained in those records. Id. ¶¶ 8–68. Because Lemieux's declaration was based on review of records in his official capacity as an Assistant District Attorney, the Court finds that he had personal knowledge sufficient to make the statements contained in the declaration (which are all corroborated by the admissible police and other records); the declaration is therefore admissible. See Searles, 98 F. Supp. 2d at 461–62 (finding sufficient personal knowledge where the affiant was a corporate officer of the defendant, which qualified her to review the relevant business materials and make sworn statements based upon those materials).[19]

_____

[18]     The Court notes that this finding is consistent with the evidentiary findings made by the Court in the previous 2013 federal court litigation, which addressed some of the same or similar evidence. Hogan v. County of Lewis, 929 F. Supp. 2d 130, 139 (N.D.N.Y. 2013) (Kahn, J.).

[19]     The Court notes that it rejects Plaintiffs' argument regarding the declaration of Lemieux on the alternative ground that Plaintiffs have not convinced the Court that the

Considering the above evidence along with the rest of the admissible evidence, the Court finds that there is sufficient evidence in the record to show that probable cause existed at the time of Mark Hogan's arrests and that there was no intervening evidence to show that the probable cause would have dissipated by the time Plaintiff was charged and prosecution commenced.[20] Each charge will be discussed in turn.

1. **Charges 1 and 2 – May 14 and 15, 2010, Charges for Petit Larceny and Trespass**

As an initial matter, the Court finds that, in its Decision and Order of March 8, 2013, the Court found that there was probable cause to support Plaintiff Mark Hogan's arrest for petit larceny for the purposes of his false arrest claim. Hogan, 929 F. Supp. 2d at 141–42. However, even if that finding was not also applicable to Plaintiff Mark Hogan's claim for malicious prosecution, the Court finds that the evidence presented clearly establishes probable cause as to

_____

information contained in the declaration "cannot be presented in a form that would be admissible in evidence" at trial for purposes of Fed. R. Civ. P. 56(c)(2).

[20] As to Plaintiffs' argument that alleged Charges 3, 4, and 6 are not merely duplicative of other charges, the evidence does not support that argument. Granted, the evidence submitted by Plaintiffs with their opposition memorandum of law includes an information for a charge of trespass occurring on October 6, 2010, which supports Plaintiffs' allegation that Charge 7 was a separate charge. Dkt. No. 54-2 at 19, 24. However, there is no information or other accusatory documents substantiating that the fact that Mark Hogan was ever charged with the alleged Charges 3, 4, and 6. Plaintiffs cite to affidavits from Moser that indicate that Mark Hogan had received additional charges of trespass and petit larceny for conduct occurring on May 29, 2010, and trespass for conduct occurring on October 4, 2010. Id. at 13–18.) However, in an Order vacating transfer motions related to those affidavits, Lewis County Court Judge Daniel R. King found that there were no accusatory instruments alleging criminal acts on those dates. Id. at 21–22. Because Plaintiffs have not offered any evidence to contradict the Lewis County Defendants' assertion that Mark Hogan was not charged for conduct on those dates (despite being able to provide the information for the October 6, 2010, charge), they have not created a genuine dispute of material fact as to whether the alleged Charges 3, 4, and 6 were actually brought against Mark Hogan.

the petit larceny charge. For example, as discussed in further detail below, the incident report notes that pictures taken by Defendant Rose's security camera clearly showed Mark Hogan taking the sawhorses and cable from Rose's driveway. Dkt. No. 49-13 at 4. Therefore, to the extent that Plaintiffs argue that probable cause did not exist as to the petit larceny charge to support prosecution on that charge, Plaintiffs' argument is unpersuasive.

The Court did not, however, determine that probable cause existed as to the charge of trespass as to either false arrest or malicious prosecution. The incident report from May 20, 2010, related to this event states that Deputy Brett Croneiser responded to a trespass/larceny complaint on May 15, 2010. Dkt. No. 49-13 at 4. Deputy Croneiser spoke to VandeWater and Rose, who alleged that Mark Hogan had trespassed on Rose's land and taken two sawhorses and a cable that had been placed at the end of Rose's driveway. Id. Deputy Croneiser and Trooper Myers viewed pictures taken by Defendant Rose's security cameras that "clearly showed a male that is known as [Mark Hogan] taking Rose's cable and saw horses from the driveway area;" Rose also stated that he possessed pictures of Mark Hogan trespassing on his property. Id. Rose and VandeWater showed Deputy Croneiser, Trooper Myers, and Sergeant Lehman where they believed the property boundary to be, and Sergeant Lehman reviewed paperwork including a recent court case with maps related to a dispute over the property boundary. Id. The officers took statements from Rose and VandeWater and agreed that, although there was sufficient evidence to substantiate the larceny, "more evidence would [have] to be gained to obtain an arrest for trespassing as property lines are up to debate." Id. An additional note from Sergeant Lehman on May 30, 2010, indicated that Mark Hogan was arrested for petit larceny on May 29, 2010, related to the May 15, 2010, incident and that he would "receive information/paperwork for trespass . . . upon arraignment." *Id.*

In his statement, VandeWater stated that "on Friday May 14 and possibly Saturday May 15, 2010," he was told by Rose that he had pictures of Mark Hogan trespassing on VanderWater's land; VandeWater indicated that he viewed the pictures and "could see that [Mark Hogan] was clearly trespassing." Id. at 9. In his statement, Rose stated that on both May 14 and May 15, 2010, he observed Mark Hogan on his security cameras coming onto the end of his driveway and taking items placed there: first a cable and then two sawhorses. Id. at 11–12.

The incident report specifically notes that Deputy Croneiser, Trooper Myers, and Sergeant Lehman were provided with a copy of the order of March 24, 2010, and corresponding judgment of April 7, 2010, from Acting New York State Supreme Court Judge Charles C. Merrell in which Judge Merrell ordered that Plaintiffs were permitted to use a designated right-of-way along VandeWater's property for the purposes of ingress and egress to their own properties, but otherwise were permanently enjoined from entering VanderWater's land. Dkt. No. 49-6 ("April 2010 Order & Judgment") at 10. This order (which, according to the incident report, was also accompanied by maps not presented to this Court) indicates the location where the stipulated right-of-way is located.

Considering this court order in conjunction with the pictures taken by Rose's security cameras that appeared to show Mark Hogan on VandeWater's land outside of the right-of-way area and the statements of Rose and VandeWater, there existed sufficient evidence from which a reasonably prudent person could conclude that there was probable cause to arrest Mark Hogan for trespassing. The fact that officers concluded that more information was needed at the time of the arrest for petit larceny is not determinative; given the complexity of the New York State Supreme Court's order and the need to assess whether the photographs showed Mark Hogan outside of the

stipulated right-of-way, it is not surprising that the officers could not determine immediately at the scene whether Mark Hogan had in fact trespassed. Notably, Plaintiffs do not argue that the New York State Supreme Court's order failed to adequately set forth the location of the right-of-way such that a reasonably prudent person would be unable to determine whether Mark Hogan was or was not located on the right-of-way in the pictures from Rose's security camera. Additionally, there is no admissible record evidence showing that probable cause existing at the time of Mark Hogan's arrest for trespass in any way dissipated by the time of his prosecution; Mark Hogan was given the information related to that charge at his arraignment. Dkt. No. 49-13 at 4.

Based on the statements in the incident report, the depositions of Rose and VandeWater, the New York State Supreme Court's order, and the pictures from Rose's security camera, the Court finds that probable cause existed for the arrest and prosecution as to this charge of trespass. Plaintiffs have not shown that there is a genuine dispute of material fact as to whether the probable cause existed at the time of Mark Hogan's arrest or the time of prosecution for this specific charge.

### 2. Charges 5 and 7 – Charges for Trespass on October 3, 2010, and October 6, 2010

The information dated October 9, 2010, related to the October 3, 2010, charge (signed by Trooper Ricky Craft) states that, on October 3, 2010, Mark Hogan parked his red Chevrolet pickup truck on lands owned by VandeWater in violation of a court order dated March 4, 2010, which permanently enjoined Plaintiffs from entering Defendant VandeWater's land other than on the specified right-of-way. Dkt. No. 49-15 at 2. The incident report states that VandeWater provided Trooper Craft with security camera photographs of a red Chevrolet pickup truck "that

appears to back into VandeWater's lawn of his camp and then back into an adjacent driveway;" VandeWater stated that Plaintiffs have a right-of-way to use his driveway, but are otherwise enjoined from entering VandeWater's land. Id. at 5–6. Trooper Craft subsequently noted that he spoke with Moser, who stated that Mark Hogan committed trespass if he left the right-of-way and drove on VandeWater's property and that patrol should obtain a signed criminal summons from an adjoining township. Id. at 6. Mark Hogan was served the signed criminal summons (dated November 2, 2010) for the offense of trespass in violation of N.Y. Penal L. § 140.05 on December 5, 2010, when he returned to his camp. Id. at 3, 7.

The information dated October 9, 2010, related to the October 6, 2010 charge states that, on or about October 6, 2010, Mark Hogan parked his red Chevrolet pickup truck, exited his vehicle and walked on land owned by VandeWater that was not within the right-of-way specified in the New York Supreme Court's March 4, 2010, order. Dkt. No. 54-2 at 24. In an addendum to the incident report for the October 3, 2010, trespass charge dated October 23, 2010, Trooper Craft noted that Defendant VandeWater reported a second incident, occurring on October 6, 2010, and provided security camera photographs showing a red Chevrolet pickup truck parked on his property and a white male exiting the vehicle and walking across his lawn that Defendant VandeWater identified as Plaintiff Mark Hogan. Id. at 6.)

As to the October 3, 2010, charge, Mark Hogan argues that, because the photographs do not show that he specifically was driving the red Chevrolet pickup truck on October 3, 2010, as part of the alleged trespassory conduct, there was no probable cause to arrest him on this charge. Pls.' Opp'n Mem. of Law at 9–10. However, probable cause does not require absolute certainty. Notably, although the report does not state that the photographs specifically showed Mark Hogan

driving the truck, it does indicate that VandeWater discussed Mark Hogan's right-of-way and the state court's permanent injunction with Trooper Craft at the scene, something which suggests that VandeWater reported that Plaintiff Mark Hogan was the driver of the vehicle. Dkt. No. 49-15 at 5–6.) VandeWater additionally observed the same truck during another incident on October 6, 2010, during which he captured photographs that showed "a white male exiting the vehicle and walking across his lawn," a male that VandeWater identified as Mark Hogan. Id. at 6. A criminal summons for the relevant charges was not obtained until November 3, 2010, which was then served on Mark Hogan on December 5, 2010. Id. at 6–7. Because Mark Hogan was not arrested on this charge until well after the second reported incident and because that second incident provided additional evidence tying Mark Hogan to the reported trespass on October 3, 2010 (namely, use of the same vehicle), the Court cannot find that there was a lack of probable cause to arrest Mark Hogan as to this charge by the time the criminal summons were served; and there is no indication that this probable cause dissipated due to other evidence between the time of the arrest and the prosecution.

As to the October 6, 2010, charge, Plaintiffs argue that, because Defendants deny the existence of this charge, there is "an issue of fact" as to this charge. Pls.' Opp'n Mem. of Law at 11. However, because the information submitted by Plaintiffs establishes that the October 6, 2010, incident was separately charged and Defendants have provided no contrary evidence, there is no genuine dispute of material fact as to whether this charge existed. The Court may therefore proceed to determining whether there is a genuine dispute of material fact as to whether probable cause existed to support this charge.

As stated above, the evidence related to the October 6, 2010, incident includes security

camera photographs showing a red Chevrolet pickup truck and a white male walking across VandeWater's lawn; VandeWater specifically identified the male as Mark Hogan and the truck as Mark Hogan's truck. Dkt. No. 49-15 at 6.) The combination of the photographs and VandeWater's statements provide undisputed probable cause for this charge.

### 3.    Charges 8 and 9 – July 2, 2011, Charges for Trespass and Criminal Mischief

The information dated July 24, 2011, related to these charges states that (a) as to the charge of criminal mischief in the fourth degree, Mark Hogan intentionally spray-painted a boulder belonging to VandeWater, and (b) as to the charge of trespass, Mark Hogan drove onto VandeWater's property. Dkt. No. 49-16 at 2–3.) In a deposition related to the criminal mischief charge, Mr. West stated that, on July 2, 2011, he saw Mark Hogan walk from his own driveway and onto VandeWater's property, where he spray-painted a symbol on a large rock. Id. at 5. In a deposition related to the trespass charge, VandeWater stated that he was seated on a vehicle in Mr. West's driveway when he witnessed Plaintiff Mark Hogan (driving a blue Volkswagon) pass his driveway and perform a k-turn on VandeWater's property before pulling out and backing into his own driveway. Id. at 4. In the incident report, Trooper David Kidder stated that VandeWater reported that Mark Hogan had trespassed on his property and vandalized his property; Trooper Kidder noted that he took the above statements from VanderWater and Mr. West. Id. at 7.

Plaintiffs argue that, despite the witness statements from VandeWater and Mr. West, there was no probable cause to arrest or prosecute Mark Hogan on these charges because, based on the "extremely contentious relationship between these neighbors," (a relationship of which Moser was well aware from past incidents) those witness statements, without objective proof, did not

constitute sufficient reliable evidence. Pls.' Opp'n Mem. of Law at 12–13. However, even the

case that Plaintiffs rely on, Mistretta v. Prokesch, 5 F. Supp. 2d 128 (E.D.N.Y. 1998), indicates

that, in a situation where there is a preexisting contentious relationship between the victim-

witness and the accused, "the [victim-witness'] complaint alone *may* not constitute probable

cause;" it does not indicate that the victim-witness' statement can *never* constitute probable cause.

Id., 5 F. Supp. 2d at 133-34 (emphasis added).

Mark Hogan has a long, documented history of arrests for trespass and other actions

against his neighbors; as noted above in the statement of undisputed material facts in Part I.B. of

this Memorandum-Decision and Order, the Fourth Department found that Mark Hogan had

previously engaged in conduct towards the Wests including destroying property, plugging the vent

pipe for their toilet, and entering their cellar to remove a subsequently installed replacement vent

pipe. See also Dkt. No. 49-7 ("Fourth Department Opinion") at 4. At the time of the arrest for this

charge, Mark Hogan had also been arrested multiple times on charges of trespassing and larceny,

which were based on photographic and other evidence. Consequently, although officers and

Moser may conceivably have had reason to question the veracity of the statements by VandeWater

and Mr. West based on the history of animosity, Mark Hogan's past legal history, including prior

arrests for similar conduct against these very same neighbors, supports the officers' and Moser's

choice to believe those sources because such past conduct tends to make the statements more

believable. See Burgess v. DeJoseph, 14-CV-1371, 2017 WL 1066662, at *6 (N.D.N.Y. Mar. 21,

2017) ("It is well-established that an officer normally has probable cause to arrest 'if he received

his information from some person, normally the putative victim or eyewitness, who it seems

reasonable to believe is telling the truth.'"); accord, Milo v. City of New York, 59 F. Supp. 3d

513, 526 (E.D.N.Y. 2014); see also Jaegly v. Couch, 439 F.3d 149, 153–54 (2d Cir. 2006)

(finding probable cause for an arrest for harassment in part based on the parties' history with each

other as revealed in a protective order); Glass v. Mayas, 794 F. Supp. 470, 474 (E.D.N.Y. 1992)

(finding that officers had probable cause to have the plaintiff involuntarily committed based in

part on evidence that the plaintiff had exhibited dangerous tendencies in the past). In determining

whether probable cause existed as to this charge based on the statements of VandeWater and Mr.

West, the Court cannot overlook the fact that Plaintiff had in fact committed (or was arrested for

committing, based on photographic and other evidence) similar acts against his neighbors in the

past. The Court therefore finds that the officers and Moser reasonably relied on the statements

from VandeWater and Mr. West, which provided probable cause to support the arrest (and

prosecution) on this charge.

### 4.    Charge 10 – August 27, 2011, Charge for Petit Larceny

The information dated August 28, 2011, related to this charge states that Mark Hogan

intentionally stole a "white painted 4 foot by 5 foot treated plywood sign with orange lettering

stating 'no trespassing, all violators will be prosecuted,'" according to the statement of eyewitness

Alex VandeWater. Dkt. No. 49-17 at 2.) In his deposition, Alex VandeWater stated that he was

performing yard work near the end of the VandeWater's driveway when he saw a red Chevrolet

truck with Virginia license plates (that he stated was driven by Mark Hogan, who he recognized)

pass the driveway and brake. Id. at 4. Alex VandeWater stated that Mark Hogan, who had pulled

the truck to the shoulder of the road by the VandeWater's signs, exited the car, approached a large

"no trespassing" sign, pulled it off the tree where it was anchored, and threw it in the back of his

truck; he also attempted to pull down another sign but was unsuccessful and quickly returned to

his truck and sped off. Id. at 4, 6. In another deposition, Defendant VandeWater stated that his son

told him he had witnessed "a male subject that I believe to be [ Mark Hogan]" steal a sign from a

tree on his property; Defendant VandeWater stated that he believed the male had been Mark

Hogan based on his son's description of a gray-haired man driving a red truck. Id. at 5. In the

incident report, Trooper Craft summarized the reports from the above depositions and noted that

there was no trace of the sign found at Plaintiffs' residence at the time Mark Hogan was issued an

appearance ticket. Id. at 10.

Plaintiffs again argue that probable cause was lacking because (a) there was no proof

beyond the statements provided by VandeWater and his son, and (b) officers and Moser were

aware of the contentious relationship between the parties. Pls.' Opp'n Mem. of Law at 15. These

arguments are rejected for the same reasons as discussed above in relation to Charges 8 and 9.

### 5. Charges 11 and 12 – July 3, 2014, Charges for Criminal Mischief and Trespass

The information dated July 8, 2014, related to these charges states that (a) as to the charge

of criminal mischief, Mark Hogan drove his vehicle over three fiberglass stakes and a freshly

seeded lawn, snapping the stakes and leaving ruts in the ground, and (b) as to the charge of

trespass, Mark Hogan drove his vehicle outside of the right-of-way on the property of

VandeWater. Dkt. No. 49-18 at 2–3.) The information notes that these allegations were based on

the deposition statement of VandeWater, although that deposition was not attached to the

documents submitted with the Lewis County Defendants' motion. Id.

Plaintiffs argue that VandeWater's statements do not constitute probable cause because the

Lewis County Defendants failed to submit the deposition and therefore it is impossible to

determine whether VandeWater actually witnessed the reported events. Pls.' Opp'n Mem. of Law at 15–16. The Lewis County Defendants reply that VandeWater himself signed the accusatory instruments laying out the facts, and that Plaintiffs have not submitted any evidence creating a triable issue of fact. Defs.' Reply Mem. of Law at 10. The Court finds, as discussed above, that the signed statement of VandeWater (and the officers' and Moser's knowledge of Mark Hogan's past arrests for similar conduct against his neighbors) constitutes probable cause to support arrest and prosecution on this charge.

For all of the above reasons, the Court grants the Lewis County Defendants' motion as to Plaintiffs' First and Second Claims due to the existence of probable cause.

### C.   Whether the First and Second Claims Against the Lewis County Defendants Are Alternatively Barred by the Doctrines of Sovereign, Absolute and/or Qualified Immunity

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in the Lewis County Defendants' memoranda of law. Defs.' Mem. of Law at 15–16; Defs.' Reply Mem. of Law at 11–12. To these reasons, the Court adds the following analysis.[21]

#### 1.   Sovereign and Absolute Immunity

The Lewis County Defendants argue that claims against them are barred by sovereign

---

[21]     The Court notes that the relevant immunity doctrines apply to Plaintiffs' federal and state law claims of malicious prosecution.  See Shmueli v. City of New York, 424 F.3d 231, 237–38 (2d Cir. 2005) (finding that the absolute immunity principles applicable to claims brought under § 1983 also protect prosecutors for claims of malicious prosecution brought under state law); Sanchez v. Port Auth. of New York and New Jersey, 08-CV-1028, 2012 WL 1068078, at *10 n.7 (E.D.N.Y. Mar. 29, 2012) (noting that New York law recognizes a similar qualified immunity as applicable to federal law claims, and that "[w]here qualified immunity applies to federal false arrest and malicious prosecution claims, it is also generally appropriate to dismiss the state analogs.").

immunity and, as to Moser, Petzoldt, and Lemieux, by absolute/prosecutorial function immunity.

Addressing sovereign immunity first, the Eleventh Amendment of the United States Constitution bars suits by citizens against a State government in federal court unless the state has waived that immunity. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of the state." Woods, 466 F.3d at 236 (quoting Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997)). However, courts have ruled that local municipalities do not enjoy sovereign immunity from suit under § 1983. See Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690–63 (1987) (holding that "municipalities and other local government units . . . can be sued under [Section] 1983 for monetary, declaratory, or injunctive relief" based on a deprivation of constitutional rights pursuant to a governmental custom, practice, or policy); see also Flemming v. New York, 05-CV-0473, 2006 WL 8426548, at *5 (N.D.N.Y. Aug. 11, 2006), adopted by 2006 WL 8426549 (N.D.N.Y. Oct. 13, 2006) (noting that Monell held that a local municipality can be sued under Section 1983); Jordan v. New York, 343 F. Supp. 2d 199, 202 (W.D.N.Y. 2004) (noting that local governments, including a county, can be held liable under Section 1983 if the challenged action was "performed pursuant to a municipal policy or custom"). Consequently, Plaintiffs' claim pursuant to § 1983 against Lewis County would not be barred outright by Eleventh Amendment immunity, but rather is subject to the Monell analysis.

To establish municipal liability based on acts of a public official under § 1983, Plaintiffs must show that (1) the actions were taken under the color of law, (2) there was a deprivation of a constitutional or statutory right, (3) causation, (4) damage, and (5) that an official policy of the

municipality caused the constitutional injury. Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690–91). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 60. "In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability." Trombley v. O'Neill, 929 F. Supp. 2d 81, 94 (N.D.N.Y. 2013).

Plaintiffs cannot show that Lewis County is subject to municipal liability because they have failed to establish a genuine dispute of material fact as to the existence of an official custom, practice, or policy of Lewis County that caused a violation of Plaintiffs' constitutional rights. Compl. ¶¶ 39–52, 79–82. Notably, nowhere in the Complaint or in their opposition memorandum of law do Plaintiffs attempt to provide even a suggestion that there was a specific official policy of the county causing the alleged violations. Id. ¶¶ 39-52, 79-82; Pls.' Opp'n Mem. of Law at 16–19. Plaintiffs' allegations (as to the Lewis County Defendants) instead focus solely on the actions of Moser, Petzoldt, and Lemiuex; Plaintiffs do not make any specific allegations against Defendant Lewis County. Id. ¶¶ 39-45. Even if Moser (as the District Attorney) was to be considered a policymaking official for Lewis County, Plaintiffs still have not established any policy implemented by Moser, much less one that caused a constitutional injury, because, as discussed above in Part III.B of this Memorandum-Decision and Order, there was probable cause underlying all of the alleged claims that are the basis for Plaintiffs' malicious prosecution claim. Therefore, the Court finds that Plaintiffs' First Claim pursuant to § 1983 against Lewis County is barred based on Monell. See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007) ("Monell

draws no distinction between injunctive and other forms of relief and, by its own terms, requires attribution of misconduct to a municipal policy or custom in suits seeking monetary, declaratory or injunctive relief.").[22]

As to Moser and Lemieux, to the extent Plaintiffs sue these defendants in their official capacity, the Eleventh Amendment would bar those claims. See Klein v. Zugabie, 15-CV-9093, 2017 WL 374733, at *8 (S.D.N.Y. Jan. 24, 2017) ("[B]ecause the Defendant District Attorney is sued in his official capacity, sovereign immunity bars Plaintiff's claim."); Powell v. State of New York, 15-CV-3733, 2015 WL 7756108, at *4 (E.D.N.Y. Nov. 30, 2015) (noting that "[w]here a district attorney is sued for damages in his official capacity, immunity under the Eleventh Amendment may attach to bar the suit, as the suit is construed as being against the State of New York," and finding that the plaintiff's claims against a county district attorney were barred by the doctrine of sovereign immunity); Schnitter v. City of Rochester, 931 F. Supp. 2d 469, 476 (W.D.N.Y. 2013) ("To the extent that plaintiff's claims against [defendant prosecutors] are asserted against them in their official capacities, they are also barred by the Eleventh Amendment [because] [i]n their role as prosecutors, [they] 'acted, in all relevant respects, on behalf of New York State, which itself is immune under the Eleventh Amendment.'").

Turning to the Lewis County Defendants' argument that Moser, Petzoldt, and Lemieux are entitled to absolute immunity based on their prosecutorial actions, absolute immunity shields

---

[22]     The Court finds, in the alternative, that the dismissal of the claims against the individual defendants due to the existence of probable cause also entitles Lewis County to dismissal of the § 1983 claim against it. See Hogan 929 F. Supp. 2d at 130 (concluding that plaintiffs had no basis to assert municipal liability because the Court granted summary judgment on the claims against the individual defendants) (citing Escalera v. Lunn, 361 F.3d 737, 749 (2d Cir. 2004)).

prosecutors from suit pursuant to § 1983 "when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'" Bernard v. Cnty. of Suffolk, 356 F.3d 495, 502 (2004). "[A] prosecutor is absolutely immune for initiating a prosecution and for presenting the State's case," and that immunity extends to probable cause hearings. Burns v. Reed, 500 U.S. 478, 490–92 (1991) (citing Imbler v. Pachtman, 424 U.S. 409, 431 (1976)). In determining whether an official is entitled to absolute immunity, "courts focus on 'the nature of the function performed, not the identity of the actor who performed it.'" Bernard, 356 F.3d at 503 (quoting Buckley v. Fitzsimmons, 508 U.S. 259, 269 (1993)). Notably, "only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions," which are "'functions normally performed by a detective or police officer.'" Id. at 502 (quoting Buckley, 509 U.S. at 273).

Absolute immunity as to state law claims are governed by state law. In New York, officials are entitled to absolute immunity "when the action involves the conscious exercise of discretion of a judicial or quasi-judicial nature." Arteaga v. State of New York, 527 N.E.2d 1194, 1196 (N.Y. 1988). "New York has long construed the exercise of prosecution powers to be a judicial or quasi-judicial function." Norton v. Town of Islip, 04-CV-3079, 2011 WL 3918220, at *2 (E.D.N.Y. Sept. 2, 2011) (collecting cases). Similar to federal law, New York distinguishes between prosecutorial and investigative functions, allowing absolute immunity for prosecutorial actions, but only qualified immunity for investigative functions. Norton, 2011 WL 3918220, at *2.

Here, Plaintiffs argue that absolute immunity is not applicable based on Moser's "personal involvement in supervising and assisting the police in charging [Mark Hogan] with offenses." Pl.'s Opp'n Mem. of Law at 16–17.  The Court agrees that Moser's conduct in advising officers to

45

arrest Mark Hogan would not fall within the scope of absolute immunity. See Kalina v. Fletcher, 522 U.S. 118, 125-26 (1997) (noting that "the provision of legal advice to the police during their pretrial investigation of the facts was protected only by qualified, rather than absolute, immunity") (citing Burns v. Reed, 500 U.S. 478, 492-96 (1991)); see also Simon v. City of New York, 727 F.3d 167, 172 (2d Cir. 2013) ("Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and 'they do not become prosecutorial functions merely because a prosecutor has chosen to participate,'" and "[a]bsolute immunity is also not available 'for the act of giving legal advice to the police in the investigative phase of a criminal case, or for assisting in a search and seizure or arrest'"); see also Barboza v. D'Agata, 151 F. Supp. 3d 363, 374-75 (S.D.N.Y. 2015) (finding no entitlement to absolute immunity for prosecutor who ordered the plaintiff's arrest). However, even if Moser's actions constituted performance of investigative functions sufficient to bar absolute immunity as to Moser, Plaintiffs do not provide any argument as to why Moser's conduct would preclude the doctrine of absolute immunity from being applied to Petzoldt and Lemieux; Plaintiffs do not provide any evidence to show that Petzoldt or Lemieux engaged in actions outside the scope of their prosecutorial function when prosecuting Plaintiff Mark Hogan for the relevant charges. To the extent that Plaintiffs have failed to allege or establish any way in which the conduct of Petzoldt and Lemieux fell outside the scope of the actual prosecution or "judicial phase" of the charges against him, Petzoldt and Lemieux are entitled to absolute immunity from liability with regard to Plaintiffs' First and Second Claims. See Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 357-58 (2d Cir. 2004) (finding prosecutor defendants were not entitled to absolute immunity because the actions they took [giving advice to state officials and intervening in medical

care decisions] in a guardianship proceeding went beyond the scope of prosecution, noting that "the challenged intervention was not prosecutorial, nor was it 'intimately associated with the judicial phase of the criminal process'").

In sum, based on the above, the Court finds that (a) Lewis County is immune from suit for Plaintiffs' First Claim based on Monell, (b) Moser and Lemieux are immune from suit for Plaintiffs' First, Second, and Eighth (as to Moser) Claims to the extent they are sued in their official capacities under the doctrine of sovereign immunity; and (c) Petzoldt and Lemieux are immune from suit as to Plaintiffs' First and Second Claims under the doctrine of absolute immunity.

## 2. Qualified Immunity

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Almighty Supreme Born Allah v. Milling, 876 F.3d 48, 59 (2d Cir. 2017) (quoting Messerschmidt v. Millender, 565 U.S. 535, 546 (2012)). "'A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Milling, 876 F.3d at 59 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). In other words, the inquiry as to whether a right is clearly established is "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Zalaski, 723 F.3d at 389 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). "Thus, qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" Milling, 876 F.3d at 59.

An official will still be entitled to qualified immunity (even if probable cause is lacking) "'if he can establish that there was arguable probable cause to arrest;'" arguable probable cause exists if "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of a reasonable competence could disagree on whether the probable cause test was met.'" Zalaski, 723 F.3d at 390 (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). The question for the purposes of the qualified immunity analysis is therefore not whether probable cause for the prosecution actually existed, but rather whether it would be objectively reasonable for the Lewis County Defendants to believe that probable cause existed.

Additionally, under New York law, an official is entitled to qualified immunity "except where there is bad faith or the action is taken without a reasonable basis." Arteaga, 527 N.E.2d at 1196; Pietra v. State of New York, 526 N.E.2d 1, 4 (1988); accord, 5 Borough Pawn, LLC v. City of New York, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009); see also Jenkins v. City of New York, 478 F.3d 76, 86 & n.8 (2d Cir. 2007) (acknowledging that New York has a common law doctrine of qualified immunity similar to the federal qualified immunity doctrine).

For the same reasons that the Court has already found that probable cause existed as to the relevant charges as discussed above in Part III.B of this Decision and Order, the Court finds that there was sufficient probable cause to satisfy the requirement for the doctrine of qualified immunity. This probable cause also establishes that there was a reasonable basis for defendants' actions in arresting and prosecuting Mark Hogan for the purpose of state law qualified immunity. The existence of probable cause undercuts any argument that a reasonable officer would have known or suspected that his conduct was unlawful. The Court therefore grants the Lewis County Defendants' motion as to the First and Second Claims against Moser, Lemieux, and Petzoldt

based on the doctrine of qualified immunity.

**D.    Whether Plaintiff's Eighth Claim Against Lewis County, Moser, and the Jane and John Doe(s) for Negligence Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in the Lewis County Defendants' memorandum of law. Defs.' Mem. of Law at 20–21.) To these reasons, the Court adds the following analysis.

As the Lewis County Defendants argue in their reply memorandum of law, Plaintiffs failed to respond to the Lewis County Defendants' argument related to Plaintiffs' Eighth Claim. Pls.' Opp'n Mem. of Law; Defs.' Reply Mem. of Law at 12. Due to Plaintiffs' failure to respond to the Lewis County Defendants' argument, the Lewis County Defendants' burden on this motion is lightened with regard to the Eighth Claim such that, in order to succeed with regard to that argument, the Lewis County Defendants need show only that the argument possess facial merit. See Rusyniak v. Gensini, 07-CV-0279, 2009 WL 3672105, at *1 & n.1 (N.D.N.Y. Oct. 30, 2009) (finding that the defendant's burden on its motion to dismiss was lightened due to the plaintiff's failure to address the defendant's request to dismiss a cause of action based on the expiration of the applicable statute of limitations, and collecting cases in which failure to respond to an argument resulted in a "modest" burden for the threshold party); accord Trombley v. O'Neill, 929 F. Supp. 2d 81, 100 (N.D.N.Y. 2013), Jenkins v. Liadka, 10-CV-1223, 2012 WL 4052286, at *8 (N.D.N.Y. Sept. 13, 2012), Hunt v. Cmty. Gen. Hosp., 11-CV-0415, 2012 WL 3151542, at *4 (N.D.N.Y. Aug. 2, 2012).

Plaintiffs' claim that Lewis County, Moser, and the John/Jane Does acted negligently must fail because Plaintiffs cannot, on the record, establish that these Defendants owed or breached a

duty to purge dismissed charges from Mark Hogan's criminal record. As an initial matter, the Court notes that Plaintiffs do not cite any authority to support his allegation that these Defendants had any duty to purge Mark Hogan's criminal record following the dismissal of the charges against him. Compl. ¶¶ 28, 79–82.

As to Defendant Moser, Plaintiffs have not established a duty to purge Mark Hogan's criminal record of the dismissed charges. Although N.Y. Crim. Proc. L. § 160.60 indicates that an arrest and prosecution becomes a nullity upon termination of a criminal action or proceeding in favor of the accused such that the accused is "restored . . . to the status he occupied before the arrest and prosecution," it does not state that Mark Hogan's criminal record must be purged. Rather, N.Y. Crim. Proc. L. § 160.50 indicates that, following the termination of a criminal action in favor of the accused, (a) the record of that action or proceeding should be *sealed*, (b) the clerk of court must notify the division of criminal justice services and all appropriate police departments and law enforcement agencies of the termination and sealing, and (c) the division of criminal justice services and police departments/law enforcement agencies must destroy or return certain evidence within its possession or control and inform any others to whom they provided such evidence of their duty to destroy or return the evidence. N.Y. Crim. Proc. L. § 160.50(1). Therefore, although N.Y. Crim. Proc. L. § 160.50 requires that the dismissed proceedings be sealed and certain evidence returned or destroyed, it does not require complete expungement of those charges; nor does it appear to put any duty on the District Attorney's Office other than to return or destroy certain relevant evidence. Plaintiffs therefore have not established the existence of a duty to purge the dismissed charges from Mark Hogan's criminal record, much less that specifically was under such a duty. Nor have they alleged or shown that Moser specifically failed

50

to comply with any duty she may have had related to the sealing of the dismissed court proceedings.

As to Lewis County, the Court agrees with the Lewis County Defendants that Plaintiffs have not alleged or shown that Lewis County owed Mark Hogan a special duty. Defs.' Mem. of Law at 20–21. As the Lewis County Defendants argue, under New York law, "[i]n order for liability to be imposed upon a municipality, there must be proof of a 'special relationship' between [the plaintiff] and the municipality;" such a special relationship is established where there is (a) "an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the person who was injured," (b) "knowledge on the part of the municipality's agents that inaction could lead to harm," (c) "some form of direct contact between the municipality's agents and the injured party," and (d) the "party's justifiable reliance on the municipality's affirmative undertaking." Aktas v. JMC Dev. Co., Inc., 09-CV-1436, 2010 WL 2520980, at *7 (N.D.N.Y. June 15, 2010) (quoting Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 [2d Cir. 1990]; Cuffy v. City of New York, 69 N.Y.2d 255, 260 (N.Y. 1987). In particular, the Court agrees that Plaintiffs have not alleged that Defendant Lewis County assumed any kind of affirmative duty as to Plaintiff Mark Hogan, or adduced evidence establishing a genuine dispute of material fact as to that issue.

For the above reasons, the Court grants the Lewis County Defendants' motion for summary judgment as to Plaintiffs' Eighth Claim.

### E.  Whether Stanford's Cross-Claims Against the Lewis County Defendants Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in the Lewis County Defendants' memorandum of law. Defs.' Mem. of Law at 23. Specifically, because the Court has dismissed all of the claims against the Lewis County Defendants, there would be no basis for contribution or indemnification against those defendants. The Court notes that its finding on this issue is further supported by the fact that Stanford filed no opposition to this request, thus lightening the Lewis County Defendants' burden on this subject.

### F. Whether the Request for Punitive Damages as to the Lewis County Defendants Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in the Lewis County Defendants' memoranda of law. Defs.' Mem. of Law at 21–22; Defs.' Reply Mem. of Law at 12–13. To these reasons, the Court adds the following analysis.

Again, the Court agrees with the Lewis County Defendants. As to Defendant Lewis County, the Supreme Court has held that municipalities are ordinarily immune from punitive damages under § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); see also Telian v. Town of Delhi, 14-CV-0945, 2015 WL 2249975, at *11 (N.D.N.Y. May 13, 2015) (granting motion to strike claim to punitive damages against the Town from the complaint because "a municipality cannot be liable for punitive damages under Section 1983"). Additionally, punitive damages are not recoverable against governmental officials sued in their official capacities. Greiner v. County of Greene, 811, F. Supp. 796, 801 (N.D.N.Y. 1993). Consequently, punitive damages against Lewis County and Moser and Lemieux in their official capacities would be foreclosed as to Plaintiffs' First Claim.

Punitive damages are recoverable against governmental officials sued in their individual

capacities where their conduct was 'motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).

Even if punitive damages are allowable on Plaintiffs' state law claims and § 1983 claims against Moser, Lemieux, and Petzoldt in their individual capacities, the Court finds that Plaintiffs cannot recover such damages against these Defendants for the simple fact that all of the claims against these Defendants have been dismissed. <u>See</u> <u>Jones v. E. Brooklyn Sec. Servs. Corp.</u>, 11-CV-6333, 2014 WL 4724699, at *3 n.1 (E.D.N.Y. Sept. 23, 2014) ("[A] separate claim or demand for punitive damages must be dismissed when all claims for liability are dismissed."); <u>Denny v. Ford Motor Co.</u>, 959 F. Supp. 2d 262, 275 (N.D.N.Y. 2013) (noting that, under New York law, a demand for punitive damages is not a separate cause of action that "possesses no viability absent its attachment to a substantive cause of action," and dismissing the stated cause of action for punitive damages on the basis that all substantive claims had been dismissed); Fagan v. AmerisourceBergen Corp., 356 F. Supp. 2d 198, 219 n.6 (E.D.N.Y. 2004) (noting that, "since all of the claims against Amgen are dismissed, the plaintiffs' punitive damages claims against it are dismissed as well").

Based on the above, the Court grants the Lewis County Defendants' motion as to Plaintiffs' claim for punitive damages.

### G.     Whether the Conduct of Plaintiff's Counsel Warrants Sanctions

While this Memorandum-Decision and Order is not based on either the doctrines of collateral estoppel or res judicata, a significant question exists that at least some of Plaintiffs' claims in this action are barred by one or both of those doctrines. For example, Plaintiffs filed a

Supplemental Complaint in his first action on September 5, 2012. No. 11-CV-0754, Dkt. No. 87. Plaintiffs' Supplemental Complaint was dismissed with prejudice on July 14, 2017. No. 11-CV-0754, Dkt. No. 400. Nonetheless, Plaintiffs have, in this second action, continued to pursue all of the claims asserted in their Complaint (filed on November 4, 2016), some of which are based on events occurring *before* September 5, 2012. See generally Compl. ¶¶ 17-18.) Moreover, even a cursory review of the material facts, legal issues and legal analysis in this second action reveals a repeated reliance on ruling rendered in Plaintiffs' first action. See, e.g., Parts I.B. [Fact Nos. 15, 16, 17, 20], I.C.1.a., I.C.1.b., III.B. [n.19], III.B.1., III.C.1. [n.23] of this Memorandum-Decision and Order.

Because Defendants have not raised this issue in their motion for summary judgment, the Court will not consider it in more detail here. However, the Court finds it appropriate to note that this apparent disregard for the Court's prior decisions appears intentional, when one considers it together with the fact that Plaintiffs' counsel disregarded an instruction from the Clerk of Court on November 8, 2016, to file a Notice of Related Cases, in violation of Paragraph G.1. of General Order 25. This latter failure inefficiently caused Plaintiffs' second action to be assigned to another judge (Chief United States District Judge Glenn T. Suddaby) rather than to the district judge to whom the earliest filed case had been assigned (the undersigned).

Finally, the existence of photo evidence against Plaintiffs, see Part III.B.2. of this Memorandum-Decision and Order, and the lack of an attempt by Plaintiffs to provide even a suggestion that there was a specific official policy of the county that caused the alleged violations, see Part III.C.1. of this Decision and Order, pushes certain of Plaintiffs' claims over the line from non-actionability or meritlessness to frivolousness and harassment.

Under the circumstances, the Court finds it necessary to caution Plaintiffs' counsel that further litigation abuses by her will result in sanctions against her.

## IV.    CONCLUSION

**Accordingly**, it is hereby

**ORDERED**, that the Lewis County Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED** in its entirety; and it is further

**ORDERED**, that Lewis County, Moser, Lemieuz, and Petzoldt are **DISMISSED** from this suit; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:        September 28, 2018
             Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge