UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

MARK HOGAN, *et al.*,

     Plaintiffs,

  -against-           7:16-CV-1325 (LEK/ATB)

LEWIS COUNTY, *et al.*,

     Defendants.

---

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I. INTRODUCTION

This is the latest round in a long-running feud between plaintiffs Mark Hogan and Elizabeth Hogan and several of their neighbors on Hiawatha Lake in the Town of Greig, New York. The feud has principally involved disputes about property lines and rights, but has sprawled to include allegations of harassment and other tortious conduct and has enmeshed various local officials in its sprawl. In this particular lawsuit, Plaintiffs have sued both their neighbors and local officials under 42 U.S.C. § 1983 and New York law. Dkt. No. 1 ("Complaint").

Presently before the Court are two separate summary judgment motions seeking dismissal of the Complaint under Federal Rule of Civil Procedure 56. The first has been filed by defendant Wilbur L. Stanford, Jr., one of Plaintiffs' neighbors. Dkt. Nos. 82 ("Stanford Motion"); 82-1 ("Stanford Statement of Material Facts" or "Stanford SMF"); 82-13 ("Stanford Memorandum"). The second has been filed by defendants Michael Fayle and Ricky Craft, both employed by the New York State Police (together, the "NYSP Defendants"). Dkt. Nos. 83 ("NYSP Motion"); 83-14 ("NYSP Memorandum"); 83-15 ("NYSP Statement of Material Facts"

or "NYSP SMF"). Plaintiffs oppose both these motions. Dkt. Nos. 89-7 ("Response to NYSP SMF"); 89-8 ("Response to Stanford SMF"); 89-9 ("Opposition to NYSP Motion"); 89-10 ("Opposition to Stanford Motion"). Both Stanford and the NYSP Defendants have filed a reply. Dkt. Nos. 91 ("NYSP Reply"); 92-1 ("Stanford Reply").

For the following reasons, the Court grants the NYSP Defendants' motion in its entirety, and grants in part and denies in part Stanford's motion.

## II.    BACKGROUND

### A.  Factual Background

The following facts are relevant to the instant motions. Where necessary, the Court provides additional details in its analysis.

#### 1.  *The Prior State Court Action*

Both Plaintiffs and Stanford own property around Hiawatha Lake, in Grieg, New York. Stanford SMF ¶ 1; Resp. to Stanford SMF ¶ 1. Though the details of the parties' various property rights and obligations is much in dispute in this lawsuit (and others), it appears beyond dispute that an access road to several lakefront properties, including Stanford's, crosses Plaintiffs' property. Hogan Dep. at 326–28, 332–34; Stanford Aff. ¶ 3–4; Stanford SMF ¶ 5. Stanford claims he has a deeded right-of-way to use this road, see Stanford SMF ¶ 5; Plaintiffs' assert that Stanford holds no such right-of-way, see Resp. to Stanford SMF ¶ 5.

Back in 2008, Plaintiffs brought a lawsuit in state court against several of their neighbors, including Stanford, in which they sought, amongst other relief, clarification regarding the existence, nature, and extent of the right-of-way across Plaintiffs' property. Stanford SMF ¶ 4; Dkt. No. 82-5 ("2008 Decision"). In that lawsuit, the Stanford and Plaintiffs "agree[d] that there exists [at least some] right of way," and the state court issued a preliminary injunction ordering

the parties to "maintain the status quo of the right of way," including no "widen[ing] or narrow[ing]." 2008 Decision at 3, 5–6. The State Court matter was eventually resolved in 2013, when the state court granted Stanford's summary judgment motion in that case. See Stanford SMF ¶ 4; Resp. to Stanford SMF ¶ 4; Dkt. No. 82-6 ("2013 Decision").

### 2.  *The September 1, 2016 Incident*

On September 1, 2016, Stanford was driving home to his cabin along the access road. Stanford SMF ¶ 6; Resp. to Stanford SMF ¶ 6. At a Y-intersection, Stanford encountered Mark Hogan,[1] who was digging a hole on the side of the roadway. Stanford SMF ¶ 6; Resp. to Stanford SMF ¶ 6; Dkt. No. 82-3 9 ("Stanford Affidavit") ¶ 6. Hogan insists he was doing repair work to fix electrical lines that Stanford had damaged. Resp. to Stanford SMF ¶ 6. Stanford, however, believed that Hogan was altering the road in violation of the preliminary injunction issued in the 2008 Decision. Stanford Aff. ¶¶ 7–8; Dkt. No. 82-8 ("Stanford Deposition") at 14.

To document Hogan's actions, Stanford stopped his car and began recording Hogan with a cellphone camera. Stanford SMF ¶ 6; Resp. to Stanford SMF ¶ 6; Dkt. Nos. 89-1 ("Hogan Deposition") at 347; 81-10 ("First Video"). Observing this, Hogan became agitated. He approached Stanford with a golf club, told him repeatedly to go and "get out of here," and called him a "little fucker." First Video. Hogan then used the handle of the golf club to knock Stanford's phone out of his hand. Id.[2]

---

[1]  Because all of the events that are pertinent to this decision involve Mark Hogan alone, and not his wife and co-plaintiff Elizabeth Hogan, when the Court refers to "Hogan" elsewhere in this opinion, it means only Mark Hogan.

[2]  Though Hogan testified that he never struck Stanford or his phone, and instead that Stanford dropped the phone, Hogan Dep. at 350, this is not borne out by the First Video.

Crucially, the parties dispute where exactly this altercation took place. Hogan attests that the event took place wholly on "Lake lot 29 on Hiawatha Lake I" ("Lot 29"), which he insists is purely his private property, subject to no easement by Stanford. Dkt. Nos. 89-5 ("Hogan Affirmation") ¶ 2; 89-6, Ex. A ("Hogan Deed"). In contrast, Stanford asserts that the incident took place on "Great Lot 24," over which his deeded right-of-way runs. Dkt. No. 92-7 ("Response to Hogan's SMF") ¶ 13; Dkt. No. 82-9 ("Stanford Deed").[3]

In any event, at this point, Stanford picked up his phone, drove to a second location, and began filming Hogan again. Stanford SMF ¶ 7; Resp. to Stanford SMF ¶ 7; Dkt. No. 89-6, Ex. C ("Second Video" and "Third Video"). After a brief period, Stanford left. Stanford SMF ¶ 7; Resp. to Stanford SMF ¶ 7.

Stanford then made a call to the New York State Police about Hogan's actions. Stanford SMF ¶ 8; Resp. to Stanford SMF ¶ 8. Defendant Fayle and Trooper Emerson Lyndaker, who is not a party to this action, both responded to Stanford's call, with Fayle arriving first. NYSP SMF ¶¶ 4–8; Resp. to NYSP SMF ¶¶ 4–8.

Stanford described to the troopers the incident between him and Hogan and showed them at least the First Video he had taken with his phone. NYSP SMF ¶ 10; Resp. to NYSP SMF ¶ 10. Fayle also took a sworn deposition statement from Stanford in which Stanford described the incident. NYSP SMF ¶ 9; Resp. to NYSP SMF ¶ 9; Dkt. No. 82-11 ("Criminal Complaint and Deposition"). Stanford then told the troopers he wanted a restraining order against Hogan. NYSP SMF ¶ 17; Resp. to NYSP SMF ¶ 17. Lyndaker spoke with their sergeant and then told Stanford that they could charge Hogan with harassment in the second degree, a violation of N.Y. Penal

_____

[3] The Court notes that the record as to the boundaries of Hogan's property is quite confused. See, e.g., Hogan Dep. at 324–32; 343–44; Stanford Dep. at 14.

Law § 240.26, and that Stanford could perform a "citizen's arrest" of Hogan. NYSP SMF ¶ 18; Resp. to NYSP SMF ¶ 18. Stanford agreed, and proceeded to file a criminal complaint against Hogan for harassment in the second degree. Stanford Aff. ¶ 14.

The troopers then followed Stanford back to where Hogan was working on the access road. NYSP SMF ¶ 20; Resp. to NYSP SMF ¶ 20. There, Stanford told Hogan that he was under arrest for harassment. Stanford SMF ¶ 9; Resp. to Stanford SMF ¶ 9. Lyndaker then placed handcuffs on Hogan and placed him in a police cruiser to transport him to court. NYSP SMF ¶ 22; Resp. to NYSP SMF ¶ 22; Dkt. No. 89-3 ("Fayle Deposition") at 40. Hogan remained in custody approximately three hours. Hogan Aff. ¶ 15.

In the aftermath of this incident, Stanford received a six-month order of protection against Hogan. Stanford SMF ¶ 10; Resp. to Stanford SMF ¶ 10. Additionally, on July 25, 2017, after a bench trial (the "Criminal Trial") in the Watson Town Court, Hogan was convicted of harassment in the second degree. NYSP SMF ¶ 25; Resp. to NYSP SMF ¶ 25; Dkt. No. 82-12 ("Certificate of Disposition"). He did not appeal the conviction. Stanford SMF ¶ 10; Resp. to Stanford SMF ¶ 10. Finally, Plaintiffs assert that the Second Video and Third Video taken by Stanford were exculpatory and were illegally withheld from them by the district attorney's office during the course of the Criminal Trial. Hogan Aff. ¶ 11.

### 3. The September 3, 2016 Incident

Two days after his arrest over his altercation with Stanford, Hogan had another run-in with state police.

David Vandewater, one of Hogan's neighbors and a defendant in this action, placed a call to state police in which he reported observing Hogan remove several orange traffic cones from their position around a dirt pile. NYSP SMF ¶ 30; Resp. to NYSP SMF ¶ 30; Dkt. No. 83-4

5

("Craft Declaration") ¶ 6. Vandewater was unsure who owned the cones but thought that it was possible Hogan had stolen them. Craft Decl. ¶ 6; Dkt. No. 83-6 ("Craft Deposition") at 25–27.

As the unit closest to Vandewater's location, defendant Craft was assigned to respond to Vandewater's call. Craft Decl. ¶ 4. Craft drove to Vandewater's house and parked his car on the right side of the narrow roadway. NYSP SMF ¶ 29; Resp. to NYSP SMF ¶ 29. Vandewater then explained to Craft what he had seen Hogan do with the cones. NYSP SMF ¶ 30; Resp. to NYSP SMF ¶ 30.

While Craft was speaking with Vandewater, Hogan happened to drive by. NYSP SMF ¶ 31; Resp. to NYSP SMF ¶ 31. He drove around Craft's patrol car—still parked on the right side of the road—and onto Vandewater's lawn before continuing on his way. NYSP SMF ¶ 31; Resp. to NYSP SMF ¶ 31.[4]

Observing this, Craft believed that Hogan had violated several provisions of New York's Vehicle and Traffic Law, as well as Penal Law § 145.00 for criminal mischief, and that he had potentially committed larceny of the traffic cones as well. Craft Decl. ¶¶ 8–9. Craft turned on his emergency lighting and pulled Hogan over. NYSP SMF ¶ 32; Resp. to NYSP SMF ¶ 32. Craft told Hogan that he had seen him drive off the roadway onto Vandewater's lawn and that he was

---

[4] In their Response to the NYSP SMF, Plaintiffs deny the NYSP Defendants' assertion that Hogan drove on to Vandewater's lawn, stating that Hogan did not leave his "designated 50-foot right-of-way" and citing to the Hogan Deed in support. See Resp. to NYSP SMF ¶ 31 (citing Hogan Deed). But the deed indicates only that Hogan owns a right-of-way, not that he remained on it on September 3, 2016 as he drove by Craft's cruiser. Thus, because the citation does not support the denial, this fact is deemed admitted. See Hogan v. Lewis Cty., No. 16-CV-1325, 2018 WL 4689094, at *6 (N.D.N.Y. Sept. 28, 2018) ("Plaintiffs deny this asserted fact, but provide no record citation to support that denial. . . . This fact is therefore deemed admitted.") (citing N.Y. Teamsters v. Express Servs., Inc., 426 F.3d 640, 648–49 (2d Cir. 2005)). Moreover, in his deposition, Hogan effectively admits that he drove over Vandewater's lawn. See Hogan Dep. at 416 ("Q. Is the grass that you drove over part of Mr. Vandewater's lawn? A: It's a pretty crappy lawn, but he mows it so you can say yes. But in that area it's a mixture of grass and dirt. It's sort of like gravel, grass and dirt, nice grass. And I wasn't in the nice grass.").

also investigating a potential larceny of traffic cones. NYSP SMF ¶ 34; Resp. to NYSP SMF ¶ 34. Hogan assured Craft that the cones were his, and to prove it he showed Craft where he had written his initials and address on the cones. NYSP SMF ¶¶ 35–37; Resp. to NYSP SMF ¶¶ 35–37. At this, Craft apparently no longer suspected Hogan of stealing the cones. Craft Dep. at 38.

By this point, however, Hogan and Vandewater began arguing and shouting at one another. Craft Decl. ¶ 11. The parties dispute exactly what happened next. Craft says that, "[i]n order to defuse the conflict and complete [his] investigate work," he "advised Mr. Hogan that he was free to go, and [Craft] would stop by his cabin [to complete their conversation] as soon as [he] finished [his] discussions with Mr. Vandewater." Craft Decl. ¶ 12; see also Craft Dep. at 37. By contrast, Hogan says that Craft ordered him to go wait at home until Craft showed up to continue the interview. Hogan Aff. ¶ 17; Hogan Dep. at 414, 418; see also Dkt. No. 83-5 ("Incident Report") (stating that Craft "directed" Hogan "to return to his house" and that Craft would be "down to talk with him in a few minutes").

In any event, whether in response to Craft's request or command, Hogan returned to his home and waited for Craft. After "maybe 15 or 20 minutes," Craft arrived. Hogan Dep. at 419–20; see also Hogan Aff. ¶ 18 ("20 minutes"). Craft and Hogan had a brief conversation, at which point Craft left. NYSP SMF ¶¶ 43–45; Resp. to NYSP SMF ¶¶ 43–45; Hogan Dep. at 419. Craft decided not to charge Hogan with any offenses based on the events of September 3, 2016. NYSP SMF ¶ 46; Resp. to NYSP SMF ¶ 46.

**B. Procedural History and Plaintiffs' Claims**

Plaintiffs initially brought ten separate claims against nine named defendants: (1) the County of Lewis, New York; (2) Lewis County District Attorney Leanne Moser; (3) Assistant District Attorney Caleb Petzoldt; (4) Assistant District Attorney Mark Lemieux; (5) Frank Rose,

yet another of Hogan's Hiawatha Lake neighbors; (6) Vandewater; (7) Stanford; (8) Fayle; and (9) Craft. <u>See</u> Compl. In a prior decision, the Court dismissed the claims against Moser, Petzoldt, Lemieux, and Lewis County. <u>See</u> Dkt. No. 68 ("2018 Order"). Relevant to Stanford's and the NYSP Defendants' motions for summary judgment are the following claims: (1) a § 1983 claim for false arrest against Stanford and Fayle arising out Hogan's arrest following the September 1, 2016 incident, Compl. ¶¶ 53–57; (2) a § 1983 claim for illegal seizure or false imprisonment against Craft arising out of Hogan's brief confinement in his house during the September 3, 2016 incident, <u>id.</u> ¶¶ 58–62; (3) a state law defamation claim against Stanford regarding his statements to Fayle on September 1, 2016, <u>id.</u> ¶¶ 63–66; (4) a state law trespass claim against Stanford arising out of the events of September 1, 2016, <u>id.</u> ¶¶ 67–72; and (5) a claim for punitive damages against all defendants, <u>id.</u> ¶¶ 87–88

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>see also</u> <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Hence, "a court's duty in reviewing a motion for summary judgment is 'carefully limited' to finding genuine disputes of fact, 'not to deciding them.'" Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 WL 4805354, at *8 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## IV.   DISCUSSION

The Court considers, in turn: (A) Plaintiffs' federal claims under § 1983; (B) Plaintiffs' state law claims; and (C) their request for punitive damages.

### A.  Federal Claims Under § 1983

Plaintiffs bring their federal claims under § 1983. "[Section] 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v.

9

Roach, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; instead it provides litigants a procedure to redress the deprivation of rights established elsewhere. See Doe v. Patrick, No. 17-CV-846, 2020 WL 529840, at *7 (N.D.N.Y. Feb. 3, 2020) (Kahn, J.) (citing Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004)). Bearing these principles in mind, the Court turns first to the false arrest claims against Fayle and Stanford, then to the illegal seizure claim against Craft.

### 1. False Arrest Claim Against Fayle and Stanford

Hogan asserts a false arrest claim under § 1983 against Fayle and Stanford stemming from Hogan's arrest on September 1, 2016. Compl. ¶¶ 53–57. "Claims for false arrest . . . brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest . . . under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks omitted); see also Callahan v. City of New York, 90 F. Supp. 3d 60, 68 (E.D.N.Y. 2015) (citation omitted) ("A [Section] 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York [state] law.") (alterations in original). To state a claim for false arrest under § 1983 or New York law, a plaintiff must allege that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991).

Both Fayle and Stanford argue that the Court should grant them summary judgment on this claim because, among other reasons, Hogan was convicted of the charge that was the basis

of the citizen's arrest. NYSP Mem. at 11–14; Stanford Mem. at 3–4. The Court agrees with respect to Fayle, but disagrees with respect to Stanford.

> ### a. Fayle

The false arrest claim against Fayle is barred by his conviction for harassment. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations and quotation marks omitted). Additionally, "if a person [is] convicted of the crime for which he [is] arrested, he [is] barred from bringing a claim for false arrest because . . . a valid conviction establishes the existence of probable cause." Vallen v. Connelly, 36 F. App'x 29, 31 (2d Cir. 2002 ) (citing Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986)); see also Clark v. City of New York, No. 16-CV-7744, 2018 WL 4372671, at *4 (S.D.N.Y. Sept. 13, 2018) ("A conviction of the crime for which an[] individual is arrested bars recovery for false arrest or malicious prosecution.") (citing Cameron, 806 F.2d at 387). As explained below, the Court finds that Hogan's conviction for harassment in the second degree bars his false arrest claim, and even if it did not, Hogan's claim would otherwise fail because Fayle had probable cause to make the arrest.[5]

> ### i. Conviction

Here, it is undisputed that, on September 1, 2016, Fayle responded to a dispatch call regarding the altercation between Stanford and Hogan. NYSP SMF ¶¶ 7–10; Resp. to NYSP

---

[5] In light of the fact that Stanford effected a citizen's arrest of Hogan and Lyndaker actually cuffed Hogan and took him into custody, see Resp. to NYSP SMF ¶¶ 21–22, the NYSP Defendants argue that Fayle is not the proper defendant for this false arrest claim, see NYSP Mem. at 9–11. However, for the purposes of resolving the instant motion, the Court assumes—without deciding—that Fayle was sufficiently involved in Hogan's arrest to potentially face liability under § 1983.

SMF ¶¶ 7–10. It is further undisputed that, as a result of this altercation, Hogan was arrested and

charged with harassment in the second degree, a violation of N.Y. Penal Law § 240.26. See

NYSP SMF ¶¶ 20–24; Resp. to NYSP SMF ¶¶ 20–24; Criminal Compl. and Dep. Finally, it is

undisputed that, after a bench trial on July 25, 2017, Hogan was convicted of harassment in the

second degree, and that he declined to appeal. NYSP SMF ¶ 25; Resp. to NYSP SMF ¶ 25;

Certificate of Disposition; Hogan Dep. at 363. Because Hogan was convicted of the crime for

which he was arrested, he does not have a viable claim for false arrest against Fayle. See

Cameron, 806 F.2d at 387 ("[T]he plaintiff can under no circumstances recover if he was

convicted of the offense for which he was arrested.").

To rebut this conclusion, Plaintiffs offer several arguments, none of them successful.

First, Plaintiffs argue that "[t]he New York Court of Appeals has unequivocally ruled that an

harassment conviction under Penal Law Sec. 240.25 is not to be given collateral estoppel effect

in a subsequent civil action." Opp'n to NYSP Mot. at 7 (citing Gilberg v. Barbieri, 53 N.Y.2d

285 (1981)); see also Opp'n to Stanford Mot. at 4. But this argument is flawed because the

doctrine of collateral estoppel is not necessary to the Court's decision. Cameron is clear that

subsequent conviction bars a claim for false arrest, separate and apart from any application of

collateral estoppel, through an independent "common-law defense." See Cameron, 806 F.2d at

384 (explaining that plaintiff's false arrest claim "is not barred by principles of collateral

estoppel," but, rather, "under common-law principles, as properly incorporated into § 1983

actions of this type, [plaintiff's] present lawsuit is defeated by his prior conviction"); see also

John v. Lewis, No. 15-CV-5346, 2017 WL 1208428, at *10 (E.D.N.Y. Mar. 31, 2017) ("[E]ven

though a conviction does not always preclude a claim for false arrest under principles of res

judicata or collateral estoppel, the 'common law defense of conviction' to a false arrest claim

[nonetheless] provides immunity to [the defendant].") (citing <u>Cameron</u>, 806 F.2d at 386–89).

Therefore, whether or not a conviction for harassment in the second degree has collateral

estoppel effect is immaterial to the Court's determination that Hogan's conviction bars his false

arrest claim. <u>See</u> <u>Patterson v. Labella</u>, No. 12-CV-1572, 2014 WL 4892895, at *13 (N.D.N.Y.

Sept. 30, 2014) ("As to Plaintiff's false arrest claim, the Court finds that Defendants are entitled

to summary judgment because Plaintiff was convicted after trial of violating N.Y. Penal Law

§ 240.26. Plaintiff did not appeal his conviction and it is therefore still valid. A conviction that

survives appeal is conclusive evidence of probable cause and is therefore a complete defense to a

false arrest claim brought under § 1983.") (internal quotation marks omitted), <u>aff'd</u>, 641 F.

App'x 89 (2d Cir. 2016).

     Next, Plaintiffs argue that Hogan's conviction for harassment in the second degree should

not bar his false arrest claim because the conviction "was procured through fraud and

concealment." Opp'n to NYSP Mot. at 9. Specifically, Plaintiffs assert that "critical recordings

were withheld from Plaintiff in the course of the prosecution," i.e., the Second Video and Third

Video that Stanford took of Hogan on September 1, 2016. <u>Id.</u> at 9. But this argument, too, fails.

While Plaintiffs are correct that a showing of "fraud or perjury" can vitiate a conviction such that

it will not bar a claim for false arrest, <u>see</u> <u>Roundtree v. City of New York</u>, 778 F. Supp. 614, 619

(E.D.N.Y. 1991) ("[A] conviction . . . conclusively [bars a false arrest claim] unless the

conviction was obtained by fraud, perjury or other corrupt means."), they have failed to raise a

triable issue of fact as to whether the conviction at issue in this case was procured through fraud

or other corrupt means.

     First, Plaintiffs have failed to establish that the Second Video and Third Video are

exculpatory. The videos do not depict Stanford engaging in any violent or aggressive behavior

such that Hogan's conduct would be justified, and even if they did, Plaintiffs have not explained how videos taken *after* Hogan had already knocked Stanford's phone out of his hand could justify Hogan's earlier actions. Nor do the videos prove that Stanford was trespassing on Hogan's land when he was filming, as they do not depict any property lines or boundaries, and Hogan's unsworn assertions in the Third Video that Stanford was trespassing do not prove that Stanford, in fact, was. Finally, the videos, in which Stanford is silent, offer nothing to substantiate Plaintiffs oft-repeated claim that Stanford "delighted in the damage and destruction he inflicted." See Opp'n to Stanford Mot. at 6; Resp. to Stanford's SMF ¶ 23; Hogan Aff. ¶ 11. No reasonable jury could find these brief videos—one 23 seconds long, the other 31 seconds—to be exculpatory, much less find that failing to turn them over to the defense meant that Hogan's conviction was obtained through fraud or corruption.

Second, Plaintiffs also fail to demonstrate that these allegedly exculpatory videos were "withheld" in a manner that qualifies as fraudulent or corrupt. Hogan knew these videos existed, as he viewed Stanford recording them, Hogan Dep. at 351–52, yet Plaintiffs have directed the Court to no evidence demonstrating that they requested the videos in discovery prior to the Criminal Trial, that the prosecutor unjustifiably withheld the videos, or that they raised a potential Brady violation with the criminal court. Furthermore, "despite plaintiff commencing this action in November 2016, plaintiff's counsel did not serve a demand for any videos until February 2018, which was six months after plaintiff was convicted of harassment." Stanford Reply at 3 (citing Dkt. No. 92-3 ("Plaintiff's Request for Documents")); see also Dkt. No. 92 ("Hurley Affidavit") ¶ 3; Certificate of Disposition (demonstrating that Hogan was convicted of harassment in the second degree on July 25, 2017). Plaintiffs have offered no evidence controverting this timeline, nor any explanation for why, when discovery opened in this case in

14

May 2017, see Dkt. No. 44, they did not immediately request videos that they now claim were crucial to their criminal case.

Without any such explanation for how these videos would exculpate Hogan, nor any evidence that they were withheld through the malevolent acts of Stanford, the police, and the prosecution, no reasonable jury could find that Hogan's conviction was procured through fraud or perjury. See Artis v. Liotard, 934 F. Supp. 101, 104 (S.D.N.Y. 1996) (granting defendants' motion for summary judgment as to plaintiff's false arrest claim because, even though plaintiff argued that his conviction for the crime of arrest had been procured through a "malicious police conspiracy against him," plaintiff had "not introduced any evidence of such a conspiracy").[6]

Therefore, Hogan's conviction serves as a complete defense to his false arrest claim against Fayle, and the Court grants the motion for summary judgment as to this claim.

### ii.  Probable Cause

Assuming for the sake of argument that, for some reason, Fayle cannot rely on Hogan's conviction for harassment in the second degree as a defense against Hogan's false arrest claim, the claim would still fail because Fayle had probable cause to make an arrest.

As described above, "probable cause is a complete defense to an action for false arrest." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

---

[6]  Plaintiffs make additional arguments regarding the correctness of Hogan's conviction, but these arguments address the merits of that decision, rather than whether any fraudulent conduct helped procure it, and therefore do not affect Court's decision. See Opp'n to Stanford Mot. at 6–8 (arguing that Stanford was a trespasser and, therefore, Hogan had a right to defend his property). If Plaintiff wished to make these arguments, he could have appealed his conviction in state court.

person to be arrested has committed or is committing a crime." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks omitted). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (quotation marks omitted). "Information about criminal activity provided by a single complainant can establish probable cause when the information is sufficiently reliable and corroborated." Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994).

Here, it is undisputed that Fayle interviewed Stanford about his altercation with Hogan, took Stanford's sworn deposition, and saw the First Video in which Hogan knocked Stanford's phone out of his hand. NYSP SMF ¶¶ 9–10; Resp. to NYSP SMF ¶¶ 9–10. Fayle, therefore, "received his information from . . . the putative victim," which alone was enough to establish probable cause. See Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (determining that officers had probable cause to arrest when they received information about a crime from the victims). In addition to Stanford's statements, Fayle also viewed the First Video, which corroborated Stanford's account. Accordingly, there was probable cause to arrest Hogan. See Corsini v. Bloomberg, 26 F. Supp. 3d 230, 241 (S.D.N.Y. 2014) (explaining that probable cause can be founded "on the victims' allegations that a crime has been committed") (internal quotation marks omitted), aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast, 613 F. App'x 1 (2d Cir. 2015).

Plaintiffs first response, rather than to contest probable cause, is to argue that, "irrespective of whether probable cause was present," Hogan's arrest "for a non-criminal violation constitute[d] an unreasonable seizure under the Fourth Amendment." Opp'n to NYSP

Mot. at 3. Specifically, Plaintiffs point out that harassment in the second degree is a "violation,"

see N.Y. Penal Law § 240.26, a level of offense below misdemeanors, see Gilberg, 53 N.Y.2d at

293 (describing how "violations" are "petty infractions below the grade of a misdemeanor"), and

that "N.Y. Criminal Procedure Law 140.10 does not grant police officers the authority to arrest

for noncriminal violations committed outside their presence," Opp'n to NYSP Mot. at 3 (citing

N.Y. C.P.L. § 140.10(1)(a)). Further, they argue that, since Hogan's alleged harassment of

Stanford occurred outside Fayle's presence, he was not "authorized to arrest [Hogan] for the

alleged harassment" under New York law. Id.

       Fatal to Plaintiffs' argument, however, is that they have brought their false arrest claim

under § 1983 and the Fourth Amendment, not New York law. The Supreme Court has stated

that, "while States are free to regulate . . . arrests however they desire, state restrictions do not

alter the Fourth Amendment's protections." Virginia v. Moore, 553 U.S. 164, 176 (2008). In line

with this principle, "several courts" have rejected exactly the argument Plaintiffs make here, and

"correctly found [NY C.P.L. 140.10] inapplicable in the context of a § 1983 false-arrest claim."

See Mikulec v. Town of Cheektowaga, 909 F. Supp. 2d 214, 225 (W.D.N.Y. 2012) (citing

cases); see also Penree v. City of Utica, New York, No. 13-CV-1323, 2016 WL 915252, at *11

(N.D.N.Y. Mar. 4, 2016) ("[T]he Constitution . . . is not concerned with the restrictions that New

York chooses to place on its police officers."). Accordingly, Plaintiffs' argument that Hogan's

arrest "for a non-criminal offense was an unreasonable seizure under the Fourth Amendment"

fails. See Opp'n to NYSP Mot. at 4; see also Worytko v. Cty. of Suffolk, No. 02-CV-2233, 2007

WL 9724944, at *10 (E.D.N.Y. May 25, 2007) (rejecting plaintiff's motion for a new trial on the

basis that his allegedly false arrest was invalid because violations—trespass and harassment in

the second degree—did not occur in the police officers' presence), aff'd, 285 F. App'x 794 (2d

Cir. 2008); cf. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (defendant's Fourth

Amendment rights are not violated when the subject is arrested for a misdemeanor that is

punishable only by a fine).

Plaintiffs also attempt to argue Hogan's arrest was not supported by probable cause

because Fayle "was not entitled to ignore a plainly obvious justification for . . . Hogan's

conduct," namely, that he was defending his property against a trespasser. Opp'n to NYSP Mot.

at 5. Specifically, as justification for Hogan's actions, Plaintiffs cite to N.Y. Penal Law § 35.20,

which states, in relevant part:

> A person in possession or control of any premises, or a person licensed
> or privileged to be thereon or therein, may use physical force upon
> another person when he or she reasonably believes such to be necessary
> to prevent or terminate what he or she reasonably believes to be the
> commission or attempted commission by such other person of a
> *criminal trespass* upon such premises.

N.Y. Penal Law § 35.20 (emphasis added).

But even assuming, as Plaintiffs would have the Court do, that Stanford parked his

vehicle on Hogan's property without permission and that Fayle was aware of this fact, § 35.20

still would not justify Hogan's response—nor undermine Fayle's probable cause assessment—

because it is limited by its terms to defense against "criminal trespass." New York's Penal Law

distinguishes between three degrees of "criminal trespass," see §§ 140.10, 140.15, and 140.17,

and simple "trespass," which is a violation, see § 140.05; see also People v. Orta, 54 Misc. 3d 16,

17 (N.Y. App. Term. 2016) (distinguishing between "trespass" and "criminal trespass"). The

three degrees of criminal trespass each contain aggravating elements that simple trespass does

not, such as entering a school, public housing project, or other area enclosed in a manner

designed to exclude intruders. See §§ 140.10, 140.15, and 140.17. Here, where there is no

indication that any of the aggravating factors were met during Stanford's brief stop on September

18

1, 2016, Stanford's actions could constitute nothing more than a simple trespass. See N.Y. Penal Law § 140.05 ("A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."). Consequently, § 35.20 would not apply and could provide no justification for Hogan's conduct that day, which in turn means that Fayle's arrest is still supported by probable cause.

For all these reasons then, the Court finds that Plaintiffs have failed to raise a genuinely disputed issue of material fact as to the false arrest claim against Fayle, and the Court grants the NYSP Defendants' summary judgment motion as to that claim.[7]

### b.  Stanford

By contrast, the Court cannot grant Stanford's summary judgment motion as to Plaintiffs' false arrest claim.

Preliminarily, the Court notes that Plaintiffs bring their false arrest claim against Stanford—who appears to be a private citizen[8]—under § 1983, which offers a cause of action only against those who act under color of state law. See 42 U.S.C. § 1983. While there is some authority to support Plaintiffs' decision to bring this false arrest claim against Stanford under § 1983, see Fraser v. Cty. of Maui, 855 F. Supp. 1167, 1177 (D. Haw. 1994) ("[S]tate action may exist where the private citizen makes a citizen's arrest upon the advice of police officers."), the

---

[7]  Because the Court grants the Motion on these grounds, it need not address Fayle's personal involvement or qualified immunity arguments. See NYSP Mem. at 9–11, 14–16; see also Kampfer v. Argotsinger, No. 18-CV-7, 2020 WL 906274, at *10 (N.D.N.Y. Feb. 25, 2020) (Kahn, J.) ("Because the Court dismisses Plaintiff's claims on the above grounds, there is no need to address Defendants' alternative arguments as to legislative immunity, qualified immunity, or personal involvement.").

[8]  The Court has scoured the record but has been unable to find any evidence, from any party, indicating what Stanford does for a living. However, since both parties agree that Stanford made a "citizen's arrest," the Court thinks it reasonable to assume that Stanford is a private citizen.

issue is not clear cut, see Patterson v. City of New York, No. 16-CV-3525, 2017 WL 3432718, at

*7 (E.D.N.Y. Aug. 9, 2017) (stating that "private citizens may effectuate arrests without

becoming state actors" and dismissing § 1983 claims against private-citizen defendants), aff'd,

758 F. App'x 217 (2d Cir. 2019); Spencer v. Lee, 864 F.2d 1376, 1380 (7th Cir. 1989)

(explaining that citizens' arrests are not made under color of state law). However, because

Stanford has failed to argue this point in his motion, and Plaintiffs have correspondingly also

failed to brief the issue, the Court assumes that Plaintiffs can properly bring their false arrest

claim against Stanford under § 1983.

Turning to the merits of Stanford's Motion, he argues that Plaintiffs' false arrest claim

against him is barred, under Cameron, by Hogan's conviction for harassment in the second

degree. See Stanford Mem. at 3–4. But the Court cannot find that Cameron protects private

citizens accused of false arrest. Cameron enunciated its rule in the context of a federal false

arrest claim brought against police officers, a fact that appears crucial to its decision and

analysis. See Cameron, 806 F.2d at 386 ("Cameron's complaint was properly dismissed because

under long-established common-law principles, Cameron's conviction gives the defendant *police*

*officers* a complete defense to the present claim.") (emphasis added); id. at 387 ("The law

enforcement officer is given th[e] protection [of the valid-conviction rule] because he has a duty

to the public to prevent crime and arrest criminals.") (internal quotation marks omitted). In

particular, the foundation of Cameron's rule— that conviction provides the defendant "a

complete defense" against a false arrest claim—is that "conviction of the plaintiff following the

arrest is viewed as establishing the existence of probable cause," and "the defendant is entitled to

prevail if he can establish that there was probable cause for the arrest," Cameron, 806 F.2d at 387

(citing Broughton v. State, 37 N.Y.2d 451, 458 (1975)). Significantly, while probable cause

shields law enforcement officers from liability for false arrest, see Broughton, 37 N.Y.2d at 458,

it provides no such shield to private citizens, see Liranzo v. United States, 690 F.3d 78, 96 (2d

Cir. 2012) ("In New York, a private citizen who makes an arrest does so at his peril; if the person

arrested did not in fact commit the crime for which he is arrested, the person who arrests him is

liable [for false arrest] even if he acts in good faith or has probable cause to make an arrest.")

(citing White v. Albany Med. Ctr. Hosp., 151 A.D.2d 859, 861 (1989)); Biswas v. City of New

York, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013) ("[P]robable cause is not a defense for false

arrests by private citizens."). Therefore, because probable cause cannot shield Stanford from

Plaintiffs' false arrest claim against him, and because Cameron's rule rests upon the probable

cause defense, the Court finds that Cameron is inapplicable to the claim against Stanford and,

thus, that the ruling in that case does not support awarding summary judgment to Stanford.

The Court recognizes that, despite this analysis, Cameron has been extended to some

subsequent cases in which the defendant was not a police officer. See Vallen, 36 F. App'x at 31

(citing Cameron rule in case where plaintiff brought claim against state social workers for

making reports to police that led to plaintiff's arrest by police); Croft v. Greenhope Servs. for

Women, Inc., No. 13-CV-2996, 2013 WL 6642677, at *5–6 (S.D.N.Y. Dec. 17, 2013) (granting

summary judgment to employee of "private non-profit" drug treatment organization who

reported plaintiff's parole violation to police because plaintiff "pled guilty to [the parole

violation], thus conclusively establishing that probable cause existed to arrest her for violating

her parole [and] [a]s a result, . . . no claim for false arrest may lie."); Blackwood v. Omorvan,

No. 16-CV-644, 2018 WL 816839, at *2 (S.D.N.Y. Feb. 8, 2018) (dismissing false arrest claim

brought against hospital security guard because plaintiff "was arrested, prosecuted and

convicted" and "[t]herefore, there was probable cause to effectuate the arrest"). But these cases

do not resolve the issue to the Court's satisfaction. In <u>Vallen</u>, the reference to the <u>Cameron</u> rule

is mere dicta, and in <u>Croft</u> and <u>Blackwood</u>, the courts applied <u>Cameron</u> without analyzing

whether its common law defense protected non-police-officer defendants. Moreover, these cases

do not address the particular issue at stake here, i.e., whether <u>Cameron</u>'s common law defense

applies to a false arrest claim against a private citizen who made a citizen's arrest.[9] As such,

these cases do not alter the Court's conclusion that <u>Cameron</u>'s rule is unavailable as a defense to

Stanford.

Without <u>Cameron</u> to rely on, to prevail on his Motion, Stanford must show that Hogan

actually committed the crime of harassment in the second degree. <u>See</u> <u>White</u>, 151 A.D.2d at 861;

<u>Scanlon v. Flynn</u>, 465 F. Supp. 32, 37 (S.D.N.Y. 1978) ("If [defendant] acted as a private citizen,

. . . he can justify the arrest only by showing that [plaintiff] in fact committed th[e] crimes [of

arrest]."). At least for the purposes of this summary judgment motion, he has not met his burden

to do so. First, though Hogan was convicted of harassment in the criminal court, collateral

estoppel does not resolve the issue in this case. Even if a conviction for a criminal violation has

collateral estoppel effect, <u>compare</u> <u>Gilberg</u>, 53 N.Y.2d at 291 (ruling that conviction for

harassment in the second degree did not have collateral estoppel effect in a subsequent civil

action) <u>with</u> <u>Akwaboa v. Bowe</u>, 791 N.Y.S.2d 867, at *2 (Sup. Ct. 2004) (finding that

defendant's plea of guilty to charge of harassment in the second degree estopped him from

arguing in a subsequent civil suit that he had not struck the plaintiff), Stanford bears the initial

burden to prove estoppel, <u>see</u> <u>Maiello v. Kirchner</u>, 949 N.Y.S.2d 200, 202–03 (2012) ("The party

seeking the benefit of collateral estoppel bears the burden of proving that the identical issue was

---

[9]  Stanford has identified no cases expressly addressing this question, <u>see</u> Stanford Mem.;
Stanford Reply, nor has the Court's own independent research.

necessarily decided in the prior proceeding, and is decisive of the present action."), and he makes
no effort to argue that the doctrine applies here, see Stanford Mem. (failing even to mention
collateral estoppel). The Court will not do the parties' work for them.

Alternatively, without addressing the estoppel issue, Stanford could also prevail on his
motion by demonstrating that Hogan's actions on September 1, 2016 did, in fact, satisfy the
elements of the charge of harassment in the second degree. Under New York law, "[a] person is
guilty of harassment in the second degree when, with intent to harass, annoy or alarm another
person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical
contact, or attempts or threatens to do the same . . . ." N.Y. Penal Law § 240.26. The video is
certainly highly probative as to whether Hogan's conduct met these elements, but the Court notes
§ 240.26's precise mens rea requirement. In order to be guilty of the harassment charge, Hogan
must have knocked Stanford's camera from his hand "with intent to harass, annoy, or alarm"
Stanford. Id. "[Q]uestions of subjective intent," such as this one, "can rarely be decided by
summary judgment," See United States v. City of New York, 717 F.3d 72, 82 (2d Cir. 2013)
(citing Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982)), particularly where, as here, a jury might
find that Hogan intended merely to prevent Stanford from filming him, rather than to harass,
annoy, or alarm him. For this reason, the Court declines to grant Stanford summary judgment as
to Plaintiffs' false arrest claim. See J&J Sports Prods., Inc. v. Bernabe, No. 08-CV-690, 2009
WL 2905781, at *1 (D. Conn. Sept. 8, 2009) (denying motion for summary judgment because
"[t]he Court believe[d] it would be inappropriate on summary judgment to make any conclusions
as to the Defendant's intent").

### 2. *Illegal Seizure Claim Against Craft*

As an initial matter, although Plaintiffs' Complaint clearly asserts a claim for "false imprisonment" against Craft. See Compl. ¶¶ 58–62 ("[A]s and for a fourth cause of action against defendant Trooper Craft for false imprisonment pursuant to 42 U.S.C. § 1983."), the parties instead treat this cause of action as one for the related, but distinct, claim of illegal seizure. See NYSP Mem. at 16–22; Opp'n to NYSP Mot. at 10–15; see also Allen v. Antal, 665 F. App'x 9, 12 (2d Cir. 2016) (noting that the district court had dismissed plaintiff's claim for "false imprisonment" and his claim for "illegal search and seizure"). Accordingly, the Court does the same.

Turning to the illegal seizure claim, Hogan asserts that he was seized for the twenty minutes he remained at home waiting for Craft, after Craft had ordered him to do so. See Compl. ¶ 59. The NYSP Defendants argue that the Court should grant summary judgment as to Plaintiffs' illegal seizure claim against Craft because: (1) Craft did not seize Hogan "within the meaning of the Fourth Amendment," see NYSP Mem. at 17; (2) even if he had seized Hogan, the brief seizure was "authorized as incident to [his] investigation," see id. at 19; and (3) he is entitled to qualified immunity, see id. at 22. The Court grants the motion because it finds that seizure of Hogan was authorized.

"Whether a seizure occurred and, if so, whether it was justified by the requisite showing, are questions of law." United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." Brendlin v. California, 551 U.S. 249, 254 (2007) (citations and quotation marks omitted); United States v. Mendenhall,

446 U.S. 544, 554 (1980) ("[A] person has been 'seized' within the meaning of the Fourth

Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable

person would have believed that he was not free to leave."). If the seizure is a brief,

"investigative detention," it is justified if the police have "reasonable suspicion to believe that

criminal activity has occurred or is about to occur." Tehrani, 49 F.3d at 58 (internal quotation

marks omitted). "If an investigative detention is properly premised upon articulable suspicion,

the next inquiry is whether its scope and duration are reasonable." Id. By contrast, if the seizure

qualifies as an arrest or its equivalent, the police must have probable cause. See Gilles v.

Repicky, 511 F.3d 239, 245 (2d Cir. 2007). In turn, "probable cause to arrest exists when police

officers have knowledge or reasonably trustworthy information of facts and circumstances that

are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested

has committed or is committing a crime." Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007)

(internal quotation marks omitted).

Here, the parties dispute what Craft said to Hogan on September 3, 2016, and whether

Craft's words—whatever they were—sufficed to "seize" Hogan for the purposes of the Fourth

Amendment.[10] However, the Court need not resolve this issue because, even if Craft did order

---

[10]  Craft attests that, after Hogan and Vandewater began "arguing and shouting" on
September 3, 2016, he "advised Mr. Hogan that he was free to go, and [he] would stop by
[Hogan's] cabin as soon as [he] finished [his] discussions with Mr. Vandewater." Craft Decl.
¶¶ 11–12; see also Craft Dep. at 37. Therefore, according to Craft, there is no basis to find that
Hogan would not have felt free to leave his home. See NYSP Mem. at 17–19. By contrast,
Hogan attests that Craft ordered him to go to his cabin and to stay there. See Hogan Aff. ¶ 17
("[Craft] then stated to me[:] . . . "Don't go anywhere. Go down to your cabin. Stay there." I did
not consent to the detainment but complied."); see also Hogan Dep. at 414. Consequently, Hogan
argues that he was seized because "a reasonable person would believe that he was required to
follow such a command from a police officer." Opp'n to NYSP Mot. at 11.

Hogan to remain at his home and Hogan was seized as a result of this order, Hogan's claim still fails because such an order was reasonable under the circumstances.

As described above, it is undisputed that, while interviewing Vandewater, Craft observed Hogan drive his vehicle onto Vandewater's lawn. As Craft attests in his affidavit, based on what he had observed, "[Hogan's] driving upon Mr. Vandewater's lawn constituted a violation of several New York State statutes, including . . . Penal Law § 145.00 (criminal mischief)."[11] Craft Decl. ¶ 8; see also People v. Each, 901 N.Y.S.2d 909 (Dist. Ct. 2009) (denying defendant's motion to dismiss charge of criminal mischief in the fourth degree where defendant had driven over victim's lawn). Having witnessed this potential violation, Craft thus had probable cause to stop and detain Hogan.[12] See Santagata v. Diaz, No. 17-CV-3053, 2020 WL 1536347, at *4 (E.D.N.Y. Mar. 30, 2020) (officer had probable cause to arrest plaintiff where "he had reasonably trustworthy information that Plaintiff had" violated Penal Law § 145.00); Garcia v. Cty. of Westchester, No. 11-CV-7258, 2017 WL 6375791, at *21 (S.D.N.Y. Dec. 12, 2017) (finding that officer had probable cause to arrest plaintiff where he "witnessed conduct that could reasonably be said to fall under the purview of N.Y. Penal Law § 145.00"); Cf. Atwater, 532 U.S. at 354 (no fourth amendment bar against plaintiff's arrest after officer had witnessed her commit minor infraction).

---

[11]  "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . [i]ntentionally damages property of another person . . . ." N.Y. Penal Law § 145.00.

[12]  For this reason, to the extent Plaintiffs have not abandoned their traditional false imprisonment claim, that claim would also fail. See Greenaway v. Cty. of Nassau, 97 F. Supp. 3d 225, 233 (E.D.N.Y. 2015) ("Probable cause is a complete defense to both Fourth Amendment and New York State law claims of false imprisonment.").

Since Craft's "seizure" of Hogan was justified by probable cause, the Court next asks whether the seizure was reasonable, and finds that it was. Hogan admits that, after his discussion with Craft on the road, he returned to his lake cabin and waited for "maybe 15 or 20 minutes." Hogan Dep. at 418–19; see also Resp. to NYSP SMF ¶ 42. Therefore, the restraint of Hogan's movement in his cabin lasted, at most, 20 minutes. To begin, since Craft had probable cause to arrest Hogan, and since such an arrest would almost certainly have taken more than twenty minutes and involved a trip to the state police barracks, the Court fails to see how a twenty-minute period of confinement at home could be considered unreasonable. Cf. Atwater, 532 U.S. at 354. And even if Craft had only had reasonable suspicion to believe that Hogan had committed some sort of violation, other courts have found similar periods of detention to comport with the Fourth Amendment's reasonableness requirement when officers were investigating similarly minor infractions. See Harwe v. Floyd, 545 F. App'x 20, 22 (2d Cir. 2013) (30-minute traffic stop not unreasonable); Ikezi v. City of New York, No. 14-CV-5905, 2017 WL 1233841, at *11 (E.D.N.Y. Mar. 31, 2017) (25-minute stop during which defendants were handcuffed not unreasonable where police were investigating potentially forged license plates); Cady v. McCook, No. 01-CV-4375, 2002 WL 999429, at *3 (N.D. Ill. May 13, 2002) (20-minute stop of uncooperative barefoot jogger found reasonable).

Harwe is especially persuasive. There, the district court granted summary judgment to a defendant police officer who had pulled the plaintiffs over after observing their car change lanes without signaling, finding that the eventual 30-minute traffic stop was reasonable under the Fourth Amendment. See Harwe v. Floyd, No. 09-CV-1027, 2011 WL 674024, at *1 (D. Conn. Feb. 17, 2011). The Second Circuit affirmed, noting that "once [the officer] stopped plaintiffs' car for a suspected traffic violation, the officer was entitled to inquire into matters that could

have informed the violation," and that the officer's "decision to investigate further by briefly questioning [the plaintiffs] separately . . . cannot be deemed more intrusive than necessary." Harwe, 545 F. App'x at 22. Similarly, once Craft had stopped Hogan to investigate the allegedly stolen traffic cones, he was entitled to inquire further regarding the criminal mischief he had just witnessed. Further, because Hogan and Vandewater then began shouting at one another, Craft Decl. at 11, it was reasonable for Craft to separate Hogan and Vandewater—before the situation escalated—in order to complete the investigation, see Harwe, 545 F. App'x at 22.

Plaintiffs' attempt to distinguish Harwe is not convincing. They argue that the Harwe officers had a need to lengthen the traffic stop in order to administer sobriety tests, and there was no similar need in the instant case. Opp'n to NYSP Mot. at 13. But the 20-minute "lengthening" of the traffic stop in this case was directly due to Hogan's and Vandewater's burgeoning argument in the midst of Craft's investigation, conduct for which Hogan undoubtedly bears some of the responsibility. Therefore, Craft's decision to have Hogan wait for him at home—and, thus, wait those extra 20 minutes—"can[not] . . . be found to have unnecessarily prolonged the stop." Id.; see also United States v. Glover, 957 F.2d 1004, 1011 (2d Cir. 1992) (stating that courts "should not indulge in unrealistic second-guessing as to the means law enforcement officers employ to conduct their investigations") (alteration and internal quotation marks omitted).

Here, Craft had probable cause to investigate Hogan for the very minor offense of criminal mischief, and he resolved that investigation favorably for Hogan by declining to issue a citation. Under the circumstances then, it appears to the Court that "[n]o reasonable jury could . . . conclude [that,] where the interview means [Craft] employed yielded a result favorable

to plaintiff[] in the course of a stop lasting a total of half an hour," Craft had violated Hogan's

Fourth Amendment rights. See Harwe, 545 F. App'x at 22.[13]

### B. State Law Claims

#### 1. Choice of Law

First, the Court briefly discusses which state's law governs Plaintiffs' diversity claims.

See Lancaster v. Ethicon, Inc., No. 19-CV-1377, 2020 WL 819291, at *3 (N.D.N.Y. Feb. 19,

2020) (Kahn, J.) ("This case is based on diversity jurisdiction. Federal law thus controls

procedural issues and state law controls substantive issues."). Though not addressing the issue

explicitly, all parties appear to agree that New York law applies. "In the absence of any objection

from [the parties], and because all the significant contacts lie in the state of New York, . . . the

Court applies New York substantive law to Plaintiffs' [state law] claims." See Balura v. Ethicon,

Inc., No. 19-CV-1372, 2020 WL 819293, at *3 (N.D.N.Y. Feb. 19, 2020) (Kahn, J.) (citing

Padula v. Lilarn Props. Corp., 644 N.E.2d 1001, 1002 (N.Y. 1994)).

#### 2. Defamation

The Court finds that Plaintiffs' state law defamation claim against Stanford fails.

In New York, "[d]efamation is the making of a false statement which tends to expose the

plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the

minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Elias

v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Stepanov v. Dow Jones & Co.,

987 N.Y.S.2d 37, 41 (1st Dep't 2014)). "To make a claim for defamation under New York law,

the plaintiff must allege '(1) a false statement that is (2) published to a third party (3) without

---

[13]   Because the Court grants the motion on these grounds, it need not address Craft's
qualified immunity argument. See NYSP Mem. at 22; see also Kampfer, 2020 WL 906274, at
*10.

privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm.'" <u>Cain v. Atelier Esthetique Inst. of Esthetics Inc.</u>, 733 F. App'x 8, 11 (2d Cir. 2018) (quoting <u>Elias</u>, 872 F.3d at 104). "Generally, spoken defamatory words are slander; written defamatory words are libel." <u>Albert v. Loksen</u>, 239 F.3d 256, 265 (2d Cir. 2001).

Hogan asserts that the following statements defamed him: (1) Stanford's statement that he had a "deeded right-of-way across [Plaintiffs'] property" ("Statement 1"); (2) Stanford's statement that Hogan "hit [his] camera with [his] golf club" ("Statement 2"); and (3) Stanford's statement that Hogan "harassed" him ("Statement 3"). <u>See</u> Hogan Dep. at 369–70; Stanford SMF ¶ 11; Resp. to Stanford SMF ¶ 11; <u>see also</u> Compl. ¶¶ 65–66.[14] Stanford argues that the Court should grant him summary judgment on this claim because "the alleged defamatory statements [were] true" and because Plaintiffs failed to properly plead damages. Stanford Mem. at 5–6. The Court agrees that Stanford is entitled to summary judgment because Plaintiffs have failed to adequately plead damages and that, in any event, Stanford's statements are privileged.

### a.  Damages

To satisfy the damages element of a defamation claim, a plaintiff must establish special damages—i.e., "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation"—or "defamation per se," which "absolves a plaintiff of the requirement to plead special damages." <u>Cain</u>, 733 F. App'x at 11 (quoting <u>Celle v. Filipino Reporter Enters. Inc.</u>, 209 F.3d 163, 179 (2d Cir. 2000). Special damages "must be fully and accurately stated, with sufficient particularity to identify actual

---

[14] Since Stanford makes no argument challenging whether he made these statements, the Court assumes for the sake of this motion that he in fact said these three things.

losses," and "[r]ound figures or a general allegation of a dollar amount . . . will not suffice." Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 164–65 (E.D.N.Y. 2014). Nor do [v]ague injuries such as "dignitary harm" or mere "injury to reputation." Macineirghe v. Cty. of Suffolk, No. 13-CV-1512, 2015 WL 4459456, at *11 (E.D.N.Y. July 21, 2015). Here, Plaintiffs' Complaint makes no allegations of special damages stemming from the reputational injury due to Stanford's alleged defamatory conduct, see Compl. ¶ 66 ("As a direct . . . result of [Stanford's] false statements, Plaintiff has been harmed to his reputation, suffered financial harm, and was deprived of his liberty."), nor have they directed the Court to any evidence in support of their Opposition to Stanford's summary judgment motion that quantifies and particularizes their damages. Therefore, Plaintiffs have failed to raise a triable issue of fact as to whether they suffered special damages due to Stanford's alleged defamatory conduct.

Nor have Plaintiffs met the elements of defamation per se. A plaintiff has established defamation per se—and, thus, "need not . . . prove[] [damages]"—"'where [the] plaintiff alleges statements: (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman.'" Thorsen, 996 F. Supp. 2d at 165 (quoting Zherka v. Amicone, 634 F.3d 642, 645 n.6 (2d Cir. 2011)). Here, the only possible category of defamation per se that might apply to Stanford's alleged statements is "charging plaintiff with a serious crime," but case law is clear that harassment in the second degree—a mere violation, see N.Y. Penal Law § 240.26 ("Harassment in the second degree is a violation")—does not qualify as such, see Warlock Enterprises v. City Ctr. Assocs., 611 N.Y.S.2d 651, 651 (1994) ("[H]arassment in the second degree is beyond the definition of slander per se because the harm to the reputation of a person

31

falsely accused of it is insubstantial."). Consequently, no reasonable jury could find that

Plaintiffs' have a viable claim for defamation per se.

Plaintiffs attempt to salvage their defamation claim by arguing that they have asserted a

libel claim—because Stanford's statements were written in the Criminal Complaint and

Deposition—and that, under New York law, damages for libel claims are presumed. Opp'n to

Stanford Mot. at 8 (citing Matherson v. Marchello, 100 A.D.2d 233, 237 (2d Dep't 1984)).

Conversely, Stanford argues that because "Plaintiffs' defamation claim is explicitly directed at

words spoken by [Stanford to Fayle and Lyndaker], not their subsequent reduction to writing in

the criminal complaint and/or supporting deposition, Plaintiffs' claim is for slander." See

Stanford Mem. at 4 (quoting Albert, 239 F.3d at 265). Plaintiffs position is somewhat strained,

though, since the first statement that Hogan claims defamed him—Stanford's statement that he

had a "deeded right-of-way across [Plaintiffs'] property," Hogan Dep. at 369–70—is nowhere

found in the Criminal Complaint and Deposition, see Criminal Compl. and Dep.

In any event, even assuming that Plaintiffs' defamation claim sounds in libel, rather than

slander, Plaintiffs have offered no authority binding on this Court to support their argument that

claims for libel require no proof of damages. See Stern v. Cosby, 645 F. Supp. 2d 258, 275

(S.D.N.Y. 2009) ("Stern argues . . . that this Court is bound by New York Appellate Division

cases . . . [but] I am not so bound. The rulings of intermediate appellate courts are 'helpful

indicators of how the state's highest court would rule,' but they are not binding on me.") (quoting

DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005)). By contrast, this Court *is* bound by the

Second Circuit's decision in Celle, which explains that "to recover in *libel*" "a plaintiff must

establish . . . special damages or per se actionability (defamatory on its face)." 209 F.3d at 176

(emphasis added); see also id. at 179 (adjudicating libel claim and differentiating between

"statements that are defamatory per se and those that require proof of special damages"); <u>Davis</u> <u>v. Ross</u>, 754 F.2d 80, 82 (2d Cir. 1985) ("New York recognizes a limited category of statements to be libelous per se which do not require pleading and proof of special damages."). For this reason, the Court still finds that, to succeed on their defamation claim, Plaintiffs needed to—but have failed to—plead special damages or damages per se.[15] In light of this failure, Stanford is entitled to summary judgment as to this claim.

### b.  Qualified Privilege

Additionally, Plaintiffs' defamation claim fails for an alternative reason. Specifically, "New York courts recognize a qualified privilege for statements made to police officers about suspected crimes." <u>Udechukwu v. City of New York</u>, 333 F. Supp. 3d 161, 172 (E.D.N.Y. 2018) (citing cases); <u>see also</u> <u>Remley v. State</u>, 665 N.Y.S.2d 1005, 1008 (Ct. Cl. 1997) ("A person filing a formal complaint charging another with a crime is . . . entitled to absolute immunity from a civil suit for defamation."). "[A] plaintiff can overcome the privilege by showing malice— evidence that the defendant knew the statement to be false, but made it anyway." <u>Udechukwu</u>, 333 F. Supp. 3d at 172. Here, the basis for Plaintiffs' defamation claim is statements Stanford made to Fayle and Lyndaker—either oral or written—about Hogan's conduct on September 1, 2016. Therefore, these statements are protected by the qualified privilege and cannot serve as the basis for a defamation claim unless Plaintiffs can show malice. They cannot. Simply put, there is

---

[15]  This conclusion is not even necessary to dispense with Plaintiffs' claim based on Stanford's alleged defamatory statement that he had a "deeded right-of-way across [Plaintiffs'] property." This statement is nowhere found in the Criminal Complaint and Deposition that Plaintiffs insist libeled Hogan. <u>See</u> Criminal Compl. and Dep. Therefore, any defamation claim arising out of this statement must sound in slander, rather than libel. Plaintiffs do not dispute that special damages or slander per se must be pleaded to sustain a slander claim. <u>See</u> Opp'n to Stanford Mot. at 8. Therefore, even assuming that Stanford's statement about owning a right-of-way over Hogan's property is defamatory (a weak assumption at best), it is clear Plaintiffs have failed to meet the damage element with regard to a claim based on this statement.

no evidence in the record that Stanford knew his statements to Fayle and Lyndaker on September 1, 2016 were false. Thus, the Court grants Stanford's summary judgment motion as to Plaintiffs' defamation claim for this reason as well. See Udechukwu, 333 F. Supp. 3d at 172 (dismissing defamation claim where plaintiff could not show malice); Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 344 (S.D.N.Y. 2000) (granting summary judgment on defamation claim to defendant who had reported a suspected crime to police because "[t]here is not one scintilla of evidence in the record . . . to support any inference of malice" and so defendant was protected by the qualified privilege).

### 3. Trespass

Plaintiffs have raised a genuine dispute of material fact as to whether Stanford trespassed on their property on September 1, 2016.

"Under New York law, trespass is the intentional invasion of another's property." Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996). "To establish a prima facie case of trespass . . . , [the] [p]laintiff must show that [the] [d]efendant[] either entered without permission, or if permission was granted, refused to leave after permission to remain ha[d] been withdrawn." Elmowitz v. Exec. Towers at Lido, LLC, 571 F. Supp. 2d 370, 377–78 (E.D.N.Y. 2008) (internal quotation marks omitted). Additionally, "[l]iability may attach regardless of defendant's mistaken belief that he or she had a right to enter." Volunteer Fire Ass'n of Tappan, Inc. v. Cty. of Rockland, 956 N.Y.S.2d 102, 105 (2d Dep't 2012); see also Menkes v. Phillips, 940 N.Y.S.2d 317, 318 (2d Dep't 2012) ("Entering upon the land of another without permission, even if innocently or by mistake, constitutes trespass.").

Stanford states that "no action for trespass can be maintained where the use of [an] easement [by the owner of the dominant parcel is] . . . reasonable." Stanford Mem. at 7 (citing

<u>Kaplan v. Inc. Vill. of Lynbrook</u>, 784 N.Y.S.2d 586 (2d Dep't 2004)). He then argues that he is entitled to summary judgment on Plaintiffs' trespass claim because "it is clear from the evidence that . . . [he] had a deeded right of way easement through Plaintiffs' property" and he was "entirely reasonable in his use of the right of way easement on September 1, 2016." Stanford Mem. at 7. However, despite Stanford's assertion, the evidence is less than clear that Stanford had a deeded right of way through the entire portion of Plaintiffs' property he traversed on September 1, 2016.

In support of his Motion, Stanford submitted the deed for his Hiawatha Lake property. <u>See</u> Stanford Deed. The deed states that Stanford's parcel has a "right of way" over "Lot No. 27 on 'Hiawatha Lake' No. 1," over "Lot No. 36 on 'Hiawatha Lake['] No. 2," and "through Lot No. 24 of the Brantingham Tract." Stanford Deed at 3–5. Hogan, for his part, owns "lot Numbers 29, 30, 31, 32, and 33 on Hiawatha Lake I," <u>see</u> Hogan Deed, over which Stanford's deed does not appear to provide any right-of-way, <u>see</u> Stanford Deed. As best the Court can discern from the evidence submitted by the parties, it appears that the access road to both Stanford's parcels and Hogan's parcels runs primarily across Lot No. 24, and both parties appear to have a right-of-way along this road. <u>See</u> Stanford Deed; Hogan Deed. Were there no dispute that the September 1, 2016 altercation between Stanford and Hogan took place on Lot No. 24, Stanford's assertion that he was on his on lawfully-deeded right-of-way would appear to be correct. However, in his affidavit, Hogan attests that "[t]he incident which occurred on September 1, 2016 . . . was . . . wholly on Lake lot 29 on Hiawatha Lake I." Hogan Aff. ¶ 2; <u>see also</u> Hogan Dep. at 325–30. Therefore, there is a genuinely disputed issue of fact as to the location of the September 1, 2016

incident that precludes summary judgment at this juncture.[16] If the altercation took place in a

location where Stanford had a deeded easement and if his use of the easement was reasonable, he

would not be a trespasser as a matter of law. However, if the altercation took place in a location

where Stanford did not have an easement, Plaintiffs' trespass claim can move forward.[17] Since

the precise location of the alleged trespass is disputed in the evidence before the Court, the Court

denies Stanford's motion as to Plaintiffs' trespass claim.

### C.  Punitive Damages

"Punitive damages are meant to punish the defendant for his willful or malicious conduct

and to deter others from similar behavior." Milfort v. Prevete, 3 F. Supp. 3d 14 (E.D.N.Y. 2014)

(internal quotation marks omitted). "[T]o be entitled to an award of punitive damages, a claimant

must show a positive element of conscious wrongdoing." New Windsor Volunteer Ambulance

Corps, Inc. v. Meyers, 442 F.3d 101, 121 (2d Cir. 2001).

Stanford asks the Court to dismiss the claim for punitive damages against him. Stanford

Mem. at 8. However, "[g]enerally, the issue of whether defendants' conduct is sufficiently

serious to warrant punitive damages is a question best left to the jury." Lozada v. Weilminster,

92 F. Supp. 3d 76, 108 (E.D.N.Y. 2015); see also Lin v. Cty. of Monroe, 66 F. Supp. 3d 341, 362

---

[16]  The Court notes that Stanford has submitted several maps that he says show the location of the right-of-way he enjoys over Hogan's property. Dkt. No. 92-5 ("Maps"). However, since none of the parcels on this map are numbered, nor the location marked where the September 1, 2016 confrontation took place, they are of little help to the Court in resolving this issue.

[17]  Alternatively, to the extent Stanford had Hogan's permission to enter any portion of the Hogans' property not covered by the right-of-way, see Hogan Dep. at 333 ("Q. But as of September 1, 2016, you allowed him to use this roadway? A. Yes"), such permission would have been revoked when Hogan told Stanford to leave. See First Video; Third Video; see also Navarro v. Fed. Paper Bd. Co., 586 N.Y.S.2d 381, 383 (3d Dep't 1992) ("[A] license or privilege to remain in a building or public place may be terminated by a lawful order not to remain which is personally communicated to the prospective trespasser by the owner or other authorized person.") (internal quotation marks omitted).

(W.D.N.Y. 2014) ("Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiffs['] proof of sufficiently serious misconduct."). For this reason, "because [Plaintiffs] ha[ve] provided sufficient evidence to overcome summary judgment, the Court cannot state as a matter of law that [they] [are] not entitled to punitive damages." See Emblen v. Port Auth. of New York/New Jersey, No. 00-CV-8877, 2002 WL 498634, at *12 (S.D.N.Y. Mar. 29, 2002).[18] Consequently, the Court denies Stanford's summary judgment motion as to the punitive damages claim asserted against him.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the NYSP Defendants' summary judgment motion (Dkt. No. 83) is **GRANTED in its entirety**. All claims against the NYSP Defendants are hereby **DISMISSED**; and it is further

**ORDERED**, that Stanford's summary judgment motion (Dkt. No. 82) is **GRANTED in part and DENIED in part**. The defamation claim against Stanford is **DISMISSED**; the false arrest claim, trespass claim, and associated request for punitive damages against Stanford can proceed; and it is further

**ORDERED**, that the Clerk shall **TERMINATE** defendants Craft and Fayle from the docket; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

---

[18]  Of course, because the Court has granted summary judgment to the NYSP Defendants as to all of the substantive claims against them, the claim for punitive damages is also dismissed. Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013) ("[P]unitive damages are a remedy and not a separate cause of action.").

**IT IS SO ORDERED.**

DATED:      June 1, 2020
            Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge