**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ELIZABETH HOGAN and MARK HOGAN,

                                        Plaintiffs,                    7:16-cv-1325 (BKS/ATB)

v.

FRANK ROSE and WILBUR L. STANFORD, JR.,

                                        Defendants.

---

**Appearances:**

*For Plaintiffs:*
A.J. Bosman
Bosman Law, L.L.C.
3000 McConnellsville Road
Blossvale, NY 13308

*For Defendant Frank Rose:*
Stephanie M. Campbell
Melissa O. Rothbart
Bond Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202

*For Defendant Wilbur L. Stanford, Jr.:*
Christopher A. Guetti
Smith Dominelli & Guetti LLC
1031 Watervliet Shaker Road, Suite 201
Albany, NY 12205

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Presently set for trial in this Section 1983 and diversity action are Plaintiff Mark Hogan's

negligence claim against Defendant Frank Rose and Plaintiff's trespass and false arrest claims

against Defendant Wilbur Stanford, Jr. (*See* Dkt. Nos. 116, 120 (summary judgment orders)). In

this decision the Court considers: (1) the parties' letter briefing on whether Plaintiff Elizabeth

Hogan has a surviving loss of consortium claim against Rose (Dkt. Nos. 128, 129) and (2) the

parties' motions in limine (Dkt. Nos. 138, 156, 168) and their responses thereto (Dkt. Nos. 173,

174, 175). The Court heard oral argument on the motions at the final pretrial conference on

March 4, 2022.

## II.     LOSS OF CONSORTIUM CLAIM

On January 10, 2022, at the Court's request, Plaintiffs Mark and Elizabeth Hogan and

Defendant Rose filed letter briefs on whether Elizabeth Hogan has a surviving loss of consortium

claim against Rose. (Dkt. Nos. 128, 129). Plaintiffs argue that the Court should allow the

consortium claim to proceed to trial "to prevent a manifest injustice" because Plaintiffs have

always alleged that the loss of consortium "was based, in part, on Plaintiff Mark Hogan's

physical injury" suffered as a result of Rose's negligence. (Dkt. No. 128, at 4). Rose responds

that Judge Kahn's decision on the parties' motions for summary judgment dismissed Elizabeth

Hogan's loss of consortium claim and that there is "no procedural or substantive basis" to

reverse that portion of Judge Kahn's decision or reinstate the claim on the eve of trial. (Dkt. No.

129, at 1).

Plaintiffs' complaint alleged loss of consortium claims against Rose and former

defendant David Vandewater. (Dkt. No. 1, at ¶¶ 83–86). The complaint alleges that Vandewater

and Rose's negligence resulted in Plaintiff Mark Hogan's physical injury, which deprived

Elizabeth Hogan "of her husband's support, comfort and companionship." (*Id.*). In September

2019, Vandewater and Rose separately moved for summary judgment, seeking dismissal of all

claims against them, including the loss of consortium claims. (*See generally* Dkt. Nos. 94, 95,

96; *see* Dkt. No. 95-1, at 14–15; Dkt. No. 96-36, at 34). In opposition, Plaintiffs argued that

Elizabeth Hogan's loss of consortium claims should survive because Mark Hogan "spent

countless time away" due to "constant[] traveling . . . for criminal proceedings as a result of Defendants' frivolous filing of criminal complaints" and his time spent in police custody. (Dkt. No. 107-4, at 17–18; Dkt. No. 113-26, at 17).[1] In his October 20, 2020 summary judgment decision, Judge Kahn relied upon Plaintiffs' assertion that Elizabeth Hogan's loss of consortium claim was "based on injuries that derive from Mark Hogan's involvement in the criminal justice system consequent to Rose and Vandewater's complaints to police." (Dkt. No. 120, at 34). Judge Kahn dismissed the loss of consortium claims, concluding: "Summary judgment is granted as to Elizabeth Hogan's claims for loss of consortium, because they are premised solely on Mark Hogan's malicious prosecution claims, which have been dismissed." (*Id.* at 35).

Plaintiffs now argue that the Court should "revise" the summary judgment order under Federal Rule of Civil Procedure 54(b) "to prevent a manifest injustice." (Dkt. No. 128, at 4).[2] Under Rule 54(b), a nonfinal, interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A court may *sua sponte* reconsider its own interlocutory orders "where there is a need to correct a clear error or prevent manifest injustice, there is an intervening change in the applicable law, or new evidence is available." *Esposito v. Suffolk Cty. Cmty. Coll.*, 517 F. Supp. 3d 126, 134 (E.D.N.Y. 2021) (quoting *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 381 F. Supp. 3d 185, 209 n.36 (N.D.N.Y. 2019)). "Whether such revision is appropriate in any given case is within the sound discretion of the trial judge." *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir. 1978).

---

[1] In their summary judgment reply memoranda, Vandewater and Rose both noted that Plaintiffs did not base the loss of consortium claims on Mark Hogan's physical injury, but rather on the alleged malicious prosecutions. (*See* Dkt. No. 112-1, at 12; Dkt. No. 115, at 14 (arguing that the loss of consortium claim failed as a matter of law "[b]ecause Plaintiffs concede that Ms. Hogan's alleged loss of consortium claim is related not to Mr. Hogan's alleged physical injury, but rather his prosecution")).

[2] Plaintiffs never moved for reconsideration of the summary judgment order dismissing the loss of consortium claims. To the extent Plaintiffs' letter brief could be considered a motion for reconsideration of that ruling, the fourteen-day period for such a motion has long passed, and the Court denies it as untimely. N.D.N.Y. L.R. 60.1.

The Court concludes that revision of the summary judgment decision to reinstate Elizabeth Hogan's loss of consortium claim against Rose is not necessary to correct a clear error or prevent manifest injustice.[3] First, the Court finds no clear error in Judge Kahn's decision to dismiss the loss of consortium claim based on the evidence and arguments presented at summary judgment. A loss of consortium claim is a "derivative claim," *Hogan v. Cty. of Lewis*, No. 11-cv-754, 2014 WL 118964, at *3, 2014 U.S. Dist. LEXIS 3027, at *9 (N.D.N.Y. Jan. 10, 2014) (citation omitted), and Plaintiffs' only arguments with regard to the loss of consortium claim at summary judgment related to the malicious prosecution claim against Rose. (Dkt. No. 107-4, at 17–18; Dkt. No. 113-26, at 17). Nor did Plaintiffs present any evidence to support a loss of consortium claim premised on Rose's alleged negligence and Mark Hogan's resulting physical injury. When considering a motion for summary judgment, "the District Court is not required 'to scour the record on its own in a search for evidence' when the plaintiffs fail to present it" in opposition to the motion. *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) (citation omitted); *see also J.B. Sterling Co. v. Verhelle*, 470 F. Supp. 3d 298, 304 (W.D.N.Y. 2020) (finding that the court did not overlook evidence on summary judgment where the plaintiff did not submit evidence which was "not newly discovered" and "readily available" to it "in formulating its response to the motion for partial summary judgment").

Second, Plaintiffs will not suffer a manifest injustice. Plaintiffs provide no explanation for their failure to argue, at any point in the five years this litigation has been pending, that Elizabeth Hogan had a viable loss of consortium claim deriving from Rose's negligence or to present evidence which would support such a claim. *Cf. Tubo v. Orange Reg'l Med. Ctr.*, No. 13-

---

[3] Plaintiffs make no argument that there has been an intervening change in the applicable law or that new evidence is available.

cv-1495, 2016 WL 452158, at *2, 2016 U.S. Dist. LEXIS 13520, at *5 (S.D.N.Y. Feb. 3, 2016) (finding that counsel's "failure to better describe all the relevant facts in Plaintiff's summary judgment opposition" did not "support the notion that the interests of justice would be served through reopening the case" (internal quotation marks and brackets omitted)).

Accordingly, the Court declines to revisit the summary judgment order dismissing Elizabeth Hogan's loss of consortium claim against Rose. The Clerk of the Court is respectfully directed to terminate Elizabeth Hogan as a Plaintiff on the docket.

## III.    MOTIONS IN LIMINE—CLAIMS AGAINST STANFORD

### A.    State Action

The parties' letter briefs also address whether Stanford was acting under color of state law when he carried out a citizen's arrest of Plaintiff for purposes of Plaintiff's Section 1983 false arrest claim. Plaintiff argues that Stanford was acting under color of state law because he acted jointly with troopers and acted at their encouragement and direction. (Dkt. No. 128, at 1–3). Stanford argues that it is well-established that a private citizen effectuating an arrest is not a state actor. (Dkt. No. 130, at 2–3).

It is well-settled that a plaintiff alleging a violation of his constitutional rights under Section 1983 must show state action. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). While private parties generally are not state actors, their conduct can be attributed to the state for Section 1983 purposes in certain circumstances. *See Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). As relevant here, to act under color of state law, "it is enough that the private party is a willful participant in joint action with the State or its agents." *Forbes v. City of New York*, No. 05-cv-7331, 2008 WL 3539936, at *5, 2008 U.S. Dist. LEXIS 63021, at *12 (S.D.N.Y. Aug. 12, 2008) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27

(1980)) (brackets omitted). The "touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police." *Id.*, 2008 WL 3539936, at *5, 2008 U.S. Dist. LEXIS 63021, at *13.

Here, the Court finds that there is sufficient evidence to create a question of fact as to whether Stanford engaged in joint action with state agents such that he acted under color of state law in effectuating a citizen's arrest of Plaintiff. At his deposition, for example, Stanford testified that two troopers told Stanford what to do and say when arresting Plaintiff, and that the troopers followed Stanford back to the scene where Stanford followed their instructions and the troopers placed Plaintiff under arrest. (Dkt. No. 82-8, at 74; *see* Dkt. No. 116, at 4–5). This is sufficient for the issue to be decided by the jury. *Anilao v. Spota*, 774 F. Supp. 2d 457, 498–99 (E.D.N.Y. 2011) (noting that private actor is a state actor when he "takes a more active role" and "jointly engages in action with state actors").

### B.      Conviction for Harassment in the Second Degree

Plaintiff argues that the Court should preclude any mention of Plaintiff's conviction of harassment in the second degree because (1) the conviction is not entitled to collateral estoppel effect, (2) it was procured through fraud and concealment, (3) it would intrude on the jury's fact-finding function, and (3) it is not admissible for impeachment purposes under Federal Rule of Evidence 609. (Dkt. No. 168, at 2–5). Stanford, in turn, argues that the conviction should be given preclusive effect as proof that Plaintiff committed the offense for which he was arrested. (Dkt. No. 138, at 7–8).[4]

---

[4] Plaintiff and Stanford agree that the conviction may not be used to impeach Plaintiff under Federal Rule of Evidence 609. (Dkt. No. 168, at 5; Dkt. No. 173, at 6).

The accusatory instrument charged Plaintiff with committing the violation of harassment in the second degree: "physical contact" in violation of New York Penal Law § 240.26(1). (Dkt. No. 82-11, at 3).[5] The instrument states: "On [September 1, 2016] said defendant did intentionally strike WILBUR L. STANFORD in the hand with the handle end of a golf club causing him to drop his phone." (*Id.*). The Certificate of Disposition indicates that Plaintiff was convicted of the charge after a trial on July 25, 2017 in Watson Town Court. (Dkt. No. 82-12). Counsel for Plaintiff confirmed at the final pretrial conference that Plaintiff was represented by counsel at the bench trial.

Collateral estoppel "precludes a party from relitigating an issue which has previously been decided against [him] in a proceeding in which [he] had a fair opportunity to fully litigate the point." *In re Dunn*, 24 N.Y.3d 699, 704 (2015) (citation and internal quotation marks omitted). The party seeking to invoke collateral estoppel has the burden of showing "the identity of the issues," while the party seeking to avoid application of the doctrine "must establish the lack of a full and fair opportunity to litigate" the issue. *Id.* Collateral estoppel "is a flexible doctrine which can never be rigidly or mechanically applied." *Gilberg v. Barbieri*, 53 N.Y.2d 285, 292 (1981) (citation omitted). "Considering the facts of each case, a court must examine 'the realities of litigation,' such as recognition that if the first proceeding involved trivial stakes, it may not have been litigated vigorously." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 112 (2021) (citations omitted).

Here, the parties agree that the identity-of-issue requirement is met, as Stanford seeks to preclude Plaintiff from relitigating the issue of whether Plaintiff engaged in harassment in the

---

[5] "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: 1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." N.Y. Penal Law § 240.26(1).

second degree.[6] It is therefore Plaintiff's burden to demonstrate that he did not have a full and

fair opportunity to litigate that issue in the prior proceeding. The factors the Court considers

include (1) the "nature of the forum and the importance of the claim in the prior litigation," (2)

the incentive to litigate and the actual extent of litigation in the prior forum," and (3) the

"foreseeability of future litigation." *In re Sokol*, 113 F.3d 303, 307 (2d Cir. 1997) (citing *Ryan v.

N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984)). The Court may also consider "the use of initiative,"

the "competence and experience of counsel, the availability of new evidence, indications of a

compromise verdict, [and] differences in the applicable law." *Gilberg*, 53 N.Y.2d at 292.

Considering these factors, the Court finds that Plaintiff has not met his burden of

demonstrating that he did not have a full and fair opportunity to litigate the harassment charge.

Plaintiff was represented by counsel at his trial. He had the right to appeal his conviction but did

not do so. Moreover, Plaintiff commenced the present action on November 4, 2016, well before

the trial on his harassment charge on July 25, 2017. Plaintiff therefore was aware of the

significance of the outcome of his criminal proceeding and had "ample incentive to litigate it."

*Cf. Martin v. Rosenzweig*, 70 A.D.3d 1112, 1114 (3d Dep't 2010) (finding the plaintiff had a full

and fair opportunity to litigate the criminal action in town court where the plaintiff was

---

[6] Plaintiff's counsel agreed, at the final pretrial conference, that an identical issue was decided in the criminal case that is decisive of the present action. Shortly after the final pretrial conference, however, Plaintiff filed a letter brief asserting, without any discussion, that Stanford failed to meet his burden of establishing the identity-of-issue requirement. (Dkt. No. 176, at 4). Plaintiff also argued that collateral estoppel should be denied because the Town Justice who presided over the criminal trial resigned from office three years after the trial, following his guilty plea to criminal mischief in connection with "keying" a town official's vehicle. (*Id.*; *see* Dkt. No. 176-2, at 2–7). As a preliminary matter, the motions in limine were fully briefed and argued; the Court did not give Plaintiff permission to file a supplemental brief, and that submission is rejected. Even if the Court considered Plaintiff's supplemental brief, however, it would not change the result here. The accusatory instrument and the certificate of disposition regarding the September 1, 2016 incident at issue in this litigation, (Dkt. Nos. 82-11, 82-12), establish the identity-of-issue requirement. And Plaintiff has failed to show how the Town Justice's unrelated resignation in December 2020 demonstrates that Plaintiff lacked a full and fair opportunity to contest the harassment charge in 2017.

represented by "competent counsel" and plaintiff commenced the civil action "during the pendency of the criminal action").

Plaintiff cites *Gilberg* to argue that a harassment conviction cannot be given collateral estoppel effect in a later civil action. (*See* Dkt. No. 168, at 2). However, the Court does not read *Gilberg* as holding that a conviction for a violation can never be given preclusive effect. *See Gilberg*, 53 N.Y.2d at 293–94 (discussing factors including the significance of the charge, lack of incentive to litigate, and lack of awareness of a possible subsequent civil suit); *see also Maiello v. Kirchner*, 98 A.D.3d 481, 483 (2d Dep't 2012) (concluding that defendant in a civil action for damages satisfied his burden of demonstrating the absence of a full and fair opportunity to contest a charge of harassment in the second degree charge because he did not have "the same incentive to contest" the harassment charge). Plaintiff further argues that the conviction was obtained by fraud. However, Judge Kahn carefully considered and rejected the same argument at summary judgment, (Dkt. No. 116, at 13–15), and Plaintiff raises no new arguments that would warrant disturbing that finding.[7]

Finally, the Court finds that precluding relitigation of the facts underlying Plaintiff's conviction best serves "what are often competing policy considerations" underlying the collateral estoppel doctrine, including "fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results." *Simmons*, 37 N.Y.3d at 112 (citations omitted). Accordingly, the Court grants Stanford's motion to accord collateral estoppel effect to Plaintiff's conviction for harassment in the second degree.

---

[7] The Court notes that the record contains a video capturing the incident which led to Plaintiff's conviction. (Dkt. No. 82-10).

### C.    Probable Cause Under N.Y. Criminal Procedure Law § 140.10 and Penal Law § 35.20

Stanford argues that Plaintiff should be precluded from "arguing or adducing testimony" regarding New York Criminal Procedure Law § 140.10 and whether Plaintiff's arrest "for a non criminal violation constituted an unreasonable seizure" under the Fourth Amendment irrespective of whether there was probable cause. (Dkt. No. 138, at 5–6). Plaintiff does not respond to this argument. Section 140.10, however, deals with a police officer's authority to arrest an individual in certain circumstances, and is, therefore, irrelevant to the issues in this case. *See* N.Y. Crim. Proc. Law § 140.10(1) ("[A] police officer may arrest a person for . . ."). The Court therefore grants this portion of Stanford's motion in limine.

Stanford also argues that Plaintiff should be precluded from making arguments or presenting testimony regarding New York Penal Law § 35.20, under which a landowner's physical force against another may be justified "to terminate what he or she reasonably believes to be the commission or attempted commission by such other person of a criminal trespass upon such premises." N.Y. Penal Law § 35.20(2). Stanford argues that Section 35.20 is "inapplicable" under the law of the case doctrine, as Judge Kahn found at summary judgment that "there [was] no indication that any of the aggravating factors" associated with criminal trespass was met during this incident. (Dkt. No. 138, at 6; *see* Dkt. No. 116, at 18–19). Plaintiff does not respond to this portion of Stanford's motion. However, the Court finds that Section 35.20 is not relevant to Plaintiff's false arrest claim against Stanford. Judge Kahn's discussion of Section 35.20 was in relation to Plaintiff's false arrest claim against Trooper Michael Fayle, to which the existence of probable cause to arrest was a defense. (*See* Dkt. No. 116, at 18–19). By contrast, with Plaintiff's claim against Stanford, the question is not whether Stanford had probable cause to arrest Plaintiff. Rather, because Stanford effectuated a citizen's arrest, Stanford must show that

Plaintiff actually committed harassment in the second degree. *See, e.g.*, *Liranzo v. United States*, 690 F.3d 78, 96 (2d Cir. 2012) ("In New York, a private citizen who makes an arrest does so at his peril; if the person arrested did not in fact commit the crime for which he is arrested, the person who arrests him is liable [for false arrest] even if he acts in good faith or has probable cause to make an arrest." (quoting *White v. Albany Med. Ctr. Hosp.*, 151 A.D.2d 859, 860 (3d Dep't 1989))). The Court therefore finds that Section 35.20 is not relevant and grants this portion of Stanford's motion in limine.

## IV.   MOTIONS IN LIMINE—CLAIM AGAINST ROSE

### A.   Negligence Claim Based on Premises Liability Theory

Rose argues that Plaintiff should be precluded from introducing evidence of or submitting to the jury a negligence claim based on a premises liability theory. (Dkt. No. 156-1, at 17–22). Rose argues that Plaintiff did not plead a negligence claim grounded in premises liability against Rose in the complaint and that Plaintiff should not be allowed to amend his complaint at this late stage. (*Id.*). Plaintiff responds that the location of his fall "has never been in genuine dispute" and that Rose has been on notice of Plaintiff's negligence claim against him since the filing of the complaint and suffers no prejudice from the fact that the complaint alleged the property where Plaintiff fell was owned by Vandewater. (Dkt. No. 174, at 9–10).

Plaintiff claims that he fell and was injured on September 3, 2015, while walking on what he then regarded as his right of way over Vandewater's property. (*See* Dkt. No. 156-1, at 6–7; Dkt. No. 174, at 9). As determined by the Prior Federal Action in 2017, and as explained by Judge Kahn, the path that Plaintiff regarded as his right of way—and on which he allegedly fell—"was in fact on Rose's property." (Dkt. No. 120, at 27–28 ("Mark Hogan thus fell and was injured on property owned by Rose and not Vandewater.")). For this reason, Judge Kahn dismissed Plaintiff's negligence claim against Vandewater. (*Id.* at 27–29).

The Court finds that Plaintiff may assert a negligence claim based on a theory of premises liability against Rose and that amendment of the pleadings is not necessary. Plaintiff's complaint asserts a cause of action for "negligence" against Defendants Vandewater and Rose. (*See* Dkt. No. 1, at ¶¶ 73–78). Plaintiff alleged that he was injured while "walking on his right of way located on the property of Defendant Vandewater." (*Id.* ¶ 74). Plaintiff further alleged that Rose "also claims ownership of the property in question." (*Id.*).

As an initial matter, a claim premised on premises liability is a species of negligence claim, which Plaintiff did plainly assert against Rose. *See, e.g.*, *PB-36 Doe v. Niagara Falls City Sch. Dist.*, 152 N.Y.S.3d 243, 246 (Sup. Ct. Niagara Cty. 2021) (finding that the "premises liability cause of action" was "duplicative of the negligence causes of action"); *cf. Fay v. Troy City Sch. Dist.*, 197 A.D.3d 1423, 1424 (3d Dep't 2021) (finding the "premises liability and negligent infliction of emotional distress claims" duplicative of the "negligence, negligent supervision and negligent retention claims"). Furthermore, the complaint's allegations that Rose claimed ownership in the property where Plaintiff fell and that provide detail about the hazardous condition that allegedly caused Plaintiff's fall put Rose on notice as to the claim against him. Indeed, in his memorandum of law in support of his motion for summary judgment, Rose made arguments about and cited cases regarding the very issues that arise under a premises liability claim. (*See* Dkt. No. 96-36, at 27–32 (making arguments about a "landowner's negligence" and duty and whether the hazard at issue was "open and obvious")). Accordingly, Rose's motion to preclude Plaintiff from asserting a premises liability claim against him at trial is denied.

### B.    Evidence Regarding Location of Plaintiff's September 2015 Injury

Plaintiff seeks to preclude Rose from introducing evidence, including surveys or maps showing lot lines, "to argue or suggest" that Plaintiff's alleged accident in September 2015 "did not occur on Rose's property." (Dkt. No. 168, at 9–10). Rose responds that evidence regarding

the property at issue "goes directly to the heart of the current matter," as the "precise location of Mr. Hogan's alleged fall is unknown." (Dkt. No. 175, at 20–21). Rose further points out that Plaintiff's exhibit and witness lists include the same evidence Plaintiff seeks to preclude Rose from offering, including maps, surveys, and surveyor testimony. (*Id.*).

At this point, the Court denies Plaintiff's request to exclude all evidence regarding the relevant property boundaries. *Cf. Garcia v. Law Offices Howard Lee Schiff P.C.*, No. 16-cv-791, 2019 WL 2076736, at *2–3, 2019 U.S. Dist. LEXIS 78980, at *4–6 (D. Conn. May 10, 2019) (noting that evidence should be excluded on a motion in limine only if the evidence is "clearly inadmissible on all potential grounds"). The Court has, however, directed the parties to work together toward reaching a stipulation to frame the issues in order to avoid a confusing presentation of evidence regarding property boundaries that have been determined in judicial proceedings. At the final pretrial conference the parties agree that the path Plaintiff *regarded as his right of way* was on property owned by Rose; the Court expects the parties to provide a stipulation regarding Plaintiff's *legal right of way.*

In any event, where Plaintiff's alleged accident occurred is an essential part of his claim against Rose. Although Plaintiff argues that Rose should be collaterally estopped from arguing that the accident did not occur on Rose's property in light of Judge Kahn's summary judgment decision, the precise location of Plaintiff's accident, and on whose property it took place, will have to be established at trial. *Cf. Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236, 249 (W.D.N.Y. 2003) ("[S]tatements made by a court in a prior ruling on summary judgment should be interpreted only in light of the limited purpose for which it was made, namely, to determine whether summary judgment was appropriate, and not for the purpose of finding facts or making legal conclusions on a full record disposing of the case on the merits.")

(citation and internal quotation marks omitted). Accordingly, Plaintiff's motion to preclude Rose from offering evidence regarding the location of Plaintiff's alleged September 2015 accident is denied.

### C.    The *West* Action

Plaintiff was a defendant in a prior action commenced in state court by a neighbor. *West v. Hogan v. Vandewater*, No. 2006-535 (N.Y. Sup. Ct. Lewis Cty.) ("the *West* Action"). In that action, Plaintiff was alleged to have trespassed, and the jury trial resulted in a verdict against him. Plaintiff seeks to preclude any mention of the *West* Action and its outcome on the grounds that the lawsuit is not relevant to any issues in this case and that such evidence would be unduly prejudicial. (Dkt. No. 168, at 7–8). Rose responds that the *West* Action is relevant because it "explicitly deals with the location of th[e] right of way" Plaintiff has over Vandewater's property and therefore "provides a framework for why Mr. Hogan entered Mr. Rose's property." (Dkt. No. 175, at 17–18). Rose further argues that other evidence relating to the *West* Action, including the determinations that Plaintiff engaged in "intentional harassment" of the Wests and was assessed with punitive damages, is admissible as evidence of Plaintiff's "motive in bringing the current case." (Dkt. No. 175, at 18–19).

In the *West* Action, the Hogans and the Vandewaters reached a stipulation, which was memorialized by a court order, regarding the location of the Hogans' right of way to their Lots 19, 21, and 22. (Dkt. No. 120, at 3–4; *see* Dkt. No. 96-23, at 5–6 (April 7, 2010 *West* court order)). As relevant here, Plaintiff's right of way proceeded "along the back lot lines" of lots owned by Rose, extending "at a width of 12 feet" from those lines into property owned by Vandewater. (Dkt. No. 96-23, at 5–6). The parties would later dispute the exact location of the "back lot lines" of Rose's property, leading to the confusion regarding both where Plaintiff's legal right of way lies and who owns the property on which he fell. The *West* court order is

relevant to the issues of ownership of property, the location of the right of way, and why Plaintiff was traversing certain portions of land; however, as noted above, the Court expects that the parties can stipulate as to the Plaintiff's legal right of way.

The Court disagrees with Rose that any other evidence regarding the *West* Action is relevant to the claims remaining for trial. Rose argues that Plaintiff's "ongoing campaign of malicious conduct toward his neighbors, including the harassment, property damage, and destruction, as outlined in the West Action and other litigation, is admissible" under Federal Rule of Evidence 404(b) to prove Plaintiff's "motive in bringing the current case." (Dkt. No. 175, at 19). Rose cites *Redd v. New York State Division of Parole*, where the court found that certain aspects of the plaintiff's disciplinary history were admissible as evidence of her motive in filing charges of sexual harassment. 923 F. Supp. 2d 393, 401 (E.D.N.Y. 2013). However, Rose has not explained how Plaintiff's motive in bringing the present lawsuit is relevant to the remaining claims, particularly since Rose was not a party to the *West* Action. The Court further finds that any probative value other aspects of the *West* Action may have is minimal and substantially outweighed by the dangers of confusing the issues and wasting time. Fed. R. Evid. 403.[8]

### D.   Argument that Plaintiff Was a Trespasser

Plaintiff seeks to preclude Rose from arguing that Plaintiff was a trespasser on Rose's property, arguing that the "location of the back lot line of Mr. Rose's Lake Lot No. 23 was settled" between the time of the *West* Action court order in 2010 and 2016 and that it "was in 2017" that "the property lines were adjusted" in the Prior Federal Action. (Dkt. No. 168, at 5–6). Rose responds that the 2017 decision in the Prior Federal Action determined that the property

---

[8] At the final pretrial conference Rose argued that evidence of the *West* Action should be admissible if Plaintiff opens the door by claiming that he was a good neighbor. The Court reserves for trial any decision regarding evidence that will be admissible based upon Plaintiff having opened the door.

Plaintiff had been using as his right of way "actually belonged to Mr. Rose," and this fact is "vital background information." (Dkt. No. 175, at 11–14). More specifically, Rose argues that he should be allowed to introduce evidence that he "took reasonable measures to attempt to keep trespassers—including Plaintiff—off of his property" and that such evidence is also relevant to Plaintiff's "assumption of the risk" of traversing the property. (*Id.*). Rose stated at the final pretrial conference that he does not intend to focus his argument on calling Plaintiff a trespasser.

In any event, the Court denies Plaintiff's request to preclude Rose from referring to Plaintiff as a trespasser. As stated, the precise location of Plaintiff's alleged accident and who owned the property is an essential part of his claim against Rose. Whether Plaintiff was traversing Rose's property, the measures taken by Rose in an effort to keep trespassers off his property, and Plaintiff's evasion of those measures are all relevant to the foreseeability of harm and the scope of Rose's duty.

### E.     Opinion Testimony Regarding the Cause of Any Dangerous Condition

Rose seeks to preclude Plaintiff from presenting any lay witness opinion testimony "regarding the causation of any erosion, subsistence, or instability of the Property on which Plaintiff claims to have been injured," on the grounds that Plaintiff has not disclosed any expert witness and such testimony would go "beyond the scope" of what is permissible for lay witness opinion testimony. (Dkt. No. 156-1, at 10–17). Plaintiff responds that his testimony is admissible because it is not based upon "scientific, technical, or other specialized knowledge" and the issue of causation is within the jury's experience and common sense. (Dkt. No. 174, at 6–9).

Under Rule 701, a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the

16

scope of Rule 702." *United States v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008) (quoting Fed. R.

Evid. 701). Lay opinion "must be the product of reasoning processes familiar to the average

person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (quoting Fed.

R. Evid. 701(c), Advisory Committee Notes to 2000 Amendments). By contrast, if the opinion of

a witness "rests in any way upon scientific, technical, or other specialized knowledge, its

admissibility must be determined by reference to Rule 702," which governs the admission of

expert witness testimony. *United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) (quoting

*Garcia*, 413 F.3d at 215).

Moreover, Rule 701(c) exists to "'prevent a party from conflating expert and lay opinion

testimony thereby conferring an aura of expertise on a witness without satisfying the reliability

standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set

forth' in Federal Rule of Civil Procedure 26." *DVL, Inc. v. Niagara Mohawk Power Corp.*, 490

F. App'x 378, 380–81 (2d Cir. 2012) (quoting *Garcia*, 413 F.3d at 215). It is undisputed that

here, as in *DVL*, Plaintiff "never designated [himself] as an expert." *Id.* at 381. Thus, Plaintiff

may not provide expert testimony. *Id.* at 381–82 (citation omitted).

The Court further concludes that Plaintiff may not offer a lay opinion regarding what

caused the earth to give way or collapse because such an opinion is "based on scientific,

technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c).

Expert witnesses routinely testify regarding soils, earth movements, and related issues. *See, e.g.*,

*Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 365 (S.D.N.Y. 2007) (expert

opining that damage was caused by the "downward movement of the house's foundation," which

was associated with "soil that is prone to settlement and that [was] inadequately compacted at the

time of" construction of the house); *Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire*

17

*Ins. Co.*, No. 13-cv-1570, 2014 WL 3958080, at \*9, 2014 U.S. Dist. LEXIS 112215, at \*25

(E.D.N.Y. Aug. 13, 2014) (noting that the parties' experts "agree[d] that soil settled underneath

the concrete slab"); *Brooklyn Waterfront Terminal Corp. v. Int'l Terminal Operating Co.*, 211 F.

Supp. 702, 704 (S.D.N.Y. 1962) (recounting expert's opinion that certain earth, prior to its

removal, had prevented "sliding or mass movement of soil"); *O'Neil v. Allstate Prop. & Cas. Ins.*

*Co.*, No. 17-cv-70, 2018 WL 4001978, at \*1, 2018 U.S. Dist. LEXIS 238715, at \*3–4 (S.D.

Miss. June 25, 2018) (precluding lay opinion testimony regarding "the type of soil upon which

the house was built, or as to the cause of the alleged damage to the foundation").

 Plaintiff argues that "[c]ommon experience allows the jury to conclude that excavating

underneath a right of way could cause the ground to give way when walked upon." (Dkt. No.

174, at 7). Plaintiff points to cases where expert testimony was not required "where the jury must

draw only a common sense causal connection between a plaintiff's injury and one precipitating

cause." *See, e.g.*, *Young v. Sw. Airlines Co.*, 409 F. Supp. 3d 110, 116 (E.D.N.Y. 2017) (no

expert testimony required where jurors could "easily assess" allegations of "bruises and

abrasions from hitting her head against the seat in front of her or falling at the bottom of the exit

slide"); *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 89 (2d Cir. 2006) (holding that "causal

link" between "hearing loss and repeated exposure to noise so loud that it causes physical pain or

ear-ringing" is "widely known"). However, as discussed above, causation opinions involving

earth movements are routinely provided by experts, and the Court concludes that such opinions

are based on scientific or specialized knowledge and not "the product of reasoning processes

familiar to the average person in everyday life." *Garcia*, 413 F.3d at 215. Furthermore, it is not

clear that the jury here will need to consider only "one precipitating cause." *Cf. Young*, 409 F.

Supp. 3d at 116. Rose argues that Plaintiff "performed substantial clearing work" on the relevant

property, "including cutting down trees and clearing large amounts of foliage and brush from the area on multiple occasions" between 2010 and 2015. (Dkt. No. 156-1, at 13). An opinion proffered by Plaintiff that the alleged earth collapse was caused by excavation, and not by clearing work or some other cause, is based on "scientific, technical, or other specialized knowledge" and therefore an impermissible lay witness opinion.

The Court therefore grants Rose's motion to preclude Plaintiff from giving opinion testimony regarding the cause of the alleged earth collapse. To be clear, the Court's holding in this regard does not preclude Plaintiff from testifying, based on personal knowledge, regarding any excavation that took place on Rose's property.

## V.     MOTIONS IN LIMINE—GENERAL CONSIDERATIONS

### A.     Plaintiff's Other Lawsuits

Plaintiff seeks to preclude mention of "other State and Federal actions" he has initiated on the grounds that these other lawsuits are not relevant to the issues in this case and "more prejudicial than probative." (Dkt. No. 168, at 6–7). Stanford responds that the Plaintiff's prior lawsuits and "history" of "interfering with different sections of the right of way" were "the very reason why" Stanford pulled over to take a video of Plaintiff and that precluding mention of this background information would prejudice Stanford by allowing Plaintiff to suggest that Stanford started recording Plaintiff for no reason. (Dkt. No. 173, at 6–7). Rose similarly responds that the other lawsuits "set the stage under which the alleged incident occurred" and provide background information regarding the parties' relationships. (Dkt. No. 175, at 14–17). Rose also points out that Plaintiff's exhibit and witness lists suggest that Plaintiff will introduce certain evidence relating to other lawsuits, thereby opening the door to further such evidence. (*Id.*).

As an initial matter, the Court agrees with Plaintiff that evidence of his other lawsuits is not admissible merely to prove his litigiousness. *See Hickey v. Myers*, No. 09-cv-1307, 2013 WL

2418252, at *4, 2013 U.S. Dist. LEXIS 77419, at *10–11 (N.D.N.Y. June 3, 2013) ("It is well

settled that it is improper for a court to admit evidence of prior lawsuits for the purpose of

demonstrating that a plaintiff is a 'chronic litigant.'" (quoting *Outley v. City of New York*, 837

F.2d 587, 591–93 (2d Cir. 1998)); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d

341, 345–46 (S.D.N.Y. 2003) ("Introduction of evidence for the specific purpose of portraying

TVT as perpetually litigious will not be permitted, insofar as such evidence may be irrelevant,

unduly prejudicial and not probative and distracting to the jury."). However, evidence of

Plaintiff's other lawsuits may be admissible for purposes other than to prove his litigiousness.

*Hickey*, 2013 WL 2418252, at *4, 2013 U.S. Dist. LEXIS 77419, at *11. Here, for example,

evidence of Plaintiff's prior lawsuit which resulted in a court order directing the Hogans and the

Stanfords to maintain the status quo of the right of way may be admissible for the purpose of

providing necessary background information to the incident between Plaintiff and Stanford in

September 2016.

      Rose further suggests that evidence of Plaintiff's prior lawsuits may be admissible for the

purpose of proving that Plaintiff "had a motive, plan or scheme to bring similar kinds of claims

against those who crossed him" or had a "campaign of litigation against a number of his

neighbors." (Dkt. No. 175, at 15–16 (citing *Hickey*, 2013 WL 2418252, at *4–5, 2013 U.S. Dist.

LEXIS 77419, at *11–14)). In *Hickey*, which involved retaliation claims, the Court allowed

limited examination into the plaintiff's prior lawsuit to show that the plaintiff "publicized the

prior lawsuit in an effort to intimidate those who disagreed with him, and to show Plaintiff's own

acknowledgement that he was not adequately fulfilling his duties." 2013 WL 2418252, at *4–5,

2013 U.S. Dist. LEXIS 77419, at *11–14. The evidence was therefore "intertwined with the

merits of the case." *Id.* Here, however, Rose does not explain how any motive or campaign of litigation on Plaintiff's part is relevant to the substantive claim of negligence against him.

The Court cannot, however, rule at this time because the Defendants have not provided the Court with the prior lawsuits that they seek to admit and the basis for admission. Defendants are therefore directed to provide a letter brief by March 10, 2022, with a proffer of prior lawsuits they seek to admit at trial, including the date of the prior lawsuit and its relevance. However, the parties may not introduce evidence of such lawsuits for the purpose of proving Plaintiff's litigiousness, and the parties will not be permitted to engage in mini trials of other actions.

### B.    Plaintiff's Arrests and Criminal Charges

Plaintiff seeks to preclude mention of all "arrests/criminal charges" brought against him by his "neighbors in Lewis County." (Dkt. No. 168, at 8–9). Plaintiff argues that, other than Stanford's arrest of him on September 1, 2016, these arrests and criminal charges are not relevant to any issue in the lawsuit, may not be used to impeach him, and would be "more prejudicial than probative." (*Id.*). Stanford argues that he should be able to introduce evidence of other arrests and criminal charges "to narrow the scope of the damages" Plaintiff suffered as a result of the alleged false arrest on September 1, 2016. (Dkt. No. 173, at 7). Rose does not respond to this portion of Plaintiff's motion in limine.

The Court agrees with Stanford that evidence of other arrests and criminal charges may be admissible for the limited purpose of establishing what, if any, damages Plaintiff suffered as a result of the incident on September 1, 2016. *See Thomas v. Kelly*, 903 F. Supp. 2d 237, 262–63 (S.D.N.Y. 2012) ("An individual subjected to a false arrest is entitled to two types of compensatory damages: (1) for loss of liberty and (2) for physical and emotional distress." (citations omitted)); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (noting that damages for a false arrest claim "cover the time of detention up until issuance of process or

21

arraignment, but not more"). The parties have not addressed what specific evidence might be admissible here; the Court will therefore rule on more specific objections properly made at trial.

### C.      Plaintiff's Employment

Plaintiff requests that the parties refer to Plaintiff's former and current employment exclusively as "government services." (Dkt. No. 168, at 9). Plaintiff states that he is "precluded by law from discussing [his] employment" and argue that Defendants "seek to prejudice Plaintiffs by virtue of the nature of [his] current and past employment." (*Id.*). Defendants do not object to Plaintiff's request. The Court therefore grants this portion of Plaintiff's motion in limine.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's request to reinstate Elizabeth Hogan's loss of consortium claim against Defendant Rose is **DENIED**; and it is further

**ORDERED** that the parties' motions in limine (Dkt. Nos. 138, 156, 168) are **GRANTED** in part and **DENIED** in part as set forth in this opinion; and it is further

**ORDERED** that the Defendants are directed to file, by March 10, 2022, a letter brief with a proffer of the prior lawsuits they seek to admit at trial, including the dates of the prior lawsuits and their relevance. Plaintiff may respond with a letter brief by March 11, 2022; and it is further

**ORDERED** that the parties are directed to file, by March 9, 2022: (1) a proposed stipulation describing the legal right of way that is at issue in Plaintiff's negligence claim, and (2) a proposed stipulation regarding Stanford's right to use the road at issue on September 1, 2016. To the extent the parties cannot agree, they must each file a letter brief with a proposed

stipulation, explaining their position with citations to documents that are either in the record or attached to their letter brief.

**IT IS SO ORDERED.**

Dated: <u>March 7, 2022</u>
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge